JOSEPH MATZ v. MIAMI CLUB RESTAURANT, a Corporation, NEW MIAMI CAFE, INC., a Corporation, ALEX MORETTA, FRANK MERLO and MODESTO FABBRI, Appellants, MANEWAL BREAD & BAKING COMPANY, ALEX MAZZI and FEDERAL BRILLIANT COMPANY, Intervenors.—100 S. W. (2d) 476.

Division One, December 14, 1936.

1134

*Anthony Canzoneri* and *William R. Schneider* for appellants.

*Sylvan Agatstein* for respondent.

FERGUSON, C.—In April, 1926, a partnership composed of defendants Frank Merlo and Modesto Fabbri engaged in the restaurant business on North Grand Avenue in the city of St. Louis under the name of "Miami Club Restaurant." The restaurant equipment, furniture and fixtures were installed at an original cost of approximately $30,000 of which $10,000 was paid in cash and a promissory note for the balance of $20,000 was secured by a purchase money chattel mortgage upon the furniture and equipment. This note, paid in installments, was fully paid and discharged in January, 1931, and the chattel mortgage released. This left the property free of mortgage lien. In 1926 the partnership employed one Salvatore Avellone, a public accountant, to "install a system of bookkeeping for their business and to (thereafter) take care of it." Avellone had charge of the books and records of the business devoting about one day a week to the work. In 1931 and the first half of 1932 creditors were urgently pressing demands against the partnership. Avellone says that sometime in 1931 Fabbri asked him "if I did not think it was wise to have a mortgage on the place to protect it in case something would happen" and that he (Avellone) advised Fabbri "to consult a lawyer." On January 5, 1932, the partners executed a chattel mortgage to defendant Moretta upon the restaurant furniture, equipment and fixtures, originally purchased in 1926 and described in the purchase money chattel mortgage discharged in January, 1931. This mortgage purported to secure the partner's promissory note to Moretta "of even date for the sum of $15,000, due and payable two years from date and bearing six per cent interest from date." The original note was not produced at the trial and Moretta said it had

been lost or destroyed. Moretta testified that, "Mr. Fabbri is my second cousin through his wife. Mr. Merlo is my first cousin." Moretta, Fabbri and Merlo claim that the $15,000 note and chattel mortgage to Moretta was to secure him for various large sums of money which he had advanced, in cash, to Fabbri and Merlo, mostly in 1926, and for which he took their notes and as security for endorsing certain rent notes; and that when this $15,000 note was executed Moretta surrendered the several notes which he held, none of which could be produced, having been lost or destroyed. We do not undertake, as it is not necessary to this opinion, to set out in detail the evidence relating to this purported indebtedness to Moretta. Avellone says other notes executed by the partnership were shown on the books as liabilities but that the execution of this note was not reported to him, was not therefore shown on the books and that he did not learn of same until sometime in October, 1932. In July, 1932, a corporation was organized under the name of Miami Club Restaurant with a capital stock of $30,000 divided into 3000 shares at a par value of $10 each. The articles of incorporation show the stock subscription and ownership as being Fabbri and Merlo each 1499 shares and Avellone 2 shares. The incorporation agreement states that "the whole amount" of the capital stock has been "actually paid up in money and property." This was done by placing an arbitrary value of $30,000 on the assets of the partnership and transferring same to the corporation at that value. Nothing is stated or noted as to liabilities. The assets of the partnership thus constituted the capital of the corporation included all the property described in the chattel mortgage given to Moretta in January of that year. It seems that a new set of books were installed in the name of the corporation. The restaurant business continued as before and was carried on under the management and control of Fabbri and Merlo who drew fixed salaries. Avellone who had charge of the incorporation for the partners stated that at the time he had no knowledge of the chattel mortgage to Moretta. But the insistence of creditors was renewed and continued and some of the debts of both the partnership and the corporation remained unpaid. In November, 1933, approximately two months before the maturity of the $15,000 note, as described in Moretta's chattel mortgage, Moretta, "to protect myself," foreclosed. At the foreclosure sale he purchased the property at a bid of $9000. Fabbri stated that the property described in the chattel mortgage and taken over by Moretta on foreclosure included all the property and equipment owned and used by the then Miami Club Restaurant, a corporation, in carrying on a restaurant business except "a few plates and silver" the value of which would not "exceed $350 or $400 at the very most." This omitted property was turned over to Moretta to apply on the deficiency. The restaurant business was not

interrupted and following the foreclosure continued and was conducted at the same place, in the same manner and "to all appearances" as before with Fabbri and Merlo in charge and drawing the same salaries. However, the name of the restaurant was now changed to Miami Club Cafe. On the day the foreclosure was made Moretta told Avellone that he (Moretta) was "now boss of the place and wanted" Avellone "to put in a new bookkeeping system for him." Avellone testified that, "when I had the books ready I wrote in the front cover 'Miami Club Cafe, Alex Moretta, Proprietor' and when Mr. Moretta saw that he objected to it.. He said 'what did you do that for;'" that Moretta showed "the book to Mr. Fabbri and they talked about that name appearing there;" that Moretta "wanted the name indicating he was proprietor erased from the books" but finally agreed "to have it remain;" and that Moretta, on one occasion, "told me that he was not the owner." Either late in 1933 or very early in 1934. a corporation was organized under the name of New Miami Cafe. Moretta testified: "I organized the corporation. My wife, my boy and I are the stockholders. The capital stock is $10,000;" and "the whole corporation is mine." The capital stock was paid up by transferring to the New Miami Cafe, a corporation, all the furniture, fixtures and equipment of the Miami Club Cafe, ownership of which was claimed by Moretta individually and which he purportedly had acquired through the foreclosure in November (1933). The assets of this last corporation, the New Miami Cafe, therefore included, and for the most part were composed of, the restaurant furniture, fixtures and equipment originally purchased and installed by the partnership of Fabbri and Merlo, in 1926, upon which they gave the chattel mortgage to Moretta under date of January 5, 1932, later transferred to the Miama Club Restaurant, a corporation (organized by them in July, 1932), and ownership of which purportedly passed to Moretta individually by the foreclosure in November, 1933. As the New Miami Cafe the restaurant was conducted, as previously and continuously it had been, under the management of Fabbri and Merlo. The organization of the new corporation the New Miami Cafe completed Moretta had the corporation execute a chattel mortgage on all of the property to him individually purporting to secure an indebtedness to him in the amount of $5000. In his testimony at this trial Fabbri stated that at that time "I don't think everything in there (the restaurant equipment and fixtures) would bring over $3500 or $4000."

Matz, the plaintiff herein was employed in this restaurant for five years. When he quit the employment the restaurant was eighteen weeks in arrears on his wages for 1932 during which time the restaurant was being operated by the Miami Club Restaurant, a corporation. Matz brought suit in a justice of the peace court against the "Miami

Club Restaurant" for these unpaid wages and in January, 1934, had judgment in the sum of $261.85. He was unable to obtain satisfaction of the judgment by levy on account of the claims of ownership of the property made by Moretta and Moretta's corporation, the New Miami Cafe.

In June, 1934, this suit in equity, in the nature of a creditor's bill, was instituted by plaintiff, in the Circuit Court of the City of St. Louis, in his own behalf "and for all creditors similarly situated who may join herein." The defendants named are, Miami Club Restaurant, a corporation, New Miami Cafe, a corporation, Alex Moretta, Frank Merlo and Modesto Fabbri. The bill charges, in effect, that the chattel mortgage to Moretta was, without consideration, a fraudulent conveyance and void as to creditors; and that Moretta, Fabbri and Merlo conspired together to fraudulently manipulate the restaurant property and assets in an effort to conceal the true ownership thereof and defeat creditors both existing and subsequent. The bill seeks to have the restaurant "property and assets or such part as is sufficient thereto" subjected and "applied to the payment of this judgment (for $261.85) and to the payment of claims of other creditors who will join herein" and prays the appointment of a receiver "to take full charge and possession of said property and assets pending trial," etc.

On July 2, 1934, Alex Mazzi, with leave of court, filed an intervening petition alleging that he had, on March 6, 1934, obtained judgment in a justice of peace court against Miami Club Restaurant, a corporation, and Frank Merlo and Modesto Fabbri, in the sum of $119 for "wages due him from said defendants" and "joining in the prayer of plaintiff's bill for relief." On the same date the Manewal Bread and Baking Co., a corporation, with leave of court, filed its intervening petition alleging that it held a "judgment against defendants M. Fabbri and F. Merlo, co-partners doing business as Miami Club Restaurant" and joining in the prayer of plaintiff's bill "for the relief prayed therein." On August 6, 1934, the defendants filed a joint answer which was a general denial. On August 9, 1934, with leave of the court, the Federal Brilliant Company, a corporation, filed its intervening petition alleging that in May, 1931, Fabbri and Merlo entered into a written contract with it for the purchase of an electric sign and the service of same and agreed to pay therefor the sum of $70 per month for thirty-six months and that "defendants are indebted to it" under the said contract "in the sum of $1,278.20," and "joins in the prayer of plaintiff's bill." On the 6th day of September, 1934, a hearing was had and evidence taken on the order theretofore made upon defendants to show cause why a receiver should not be appointed as prayed by the bill. The evidence appearing in this record was introduced at that time. On

September 24, 1934, "the Court after duly considering the testimony heard upon the order to show cause" made an order that: "If defendants on or before October 1, 1934, shall pay and discharge judgments heretofore rendered in favor of Matz ($261.28) Alex Mazzie ($119) and Manewal Bread Company ($590.28) then the application for receiver will be denied." The plaintiff suggested to the Court on October 3, 1934, that "defendants have failed to pay the judgments described in the Court's order of September 24, 1934, within the time set by the Court to comply with said order." On October 4, 1934, the court appointed a receiver and his bond fixed at $1000 was filed and approved on October 5, 1934. On October 9, a stipulation was entered of record that "the testimony and evidence submitted . . . upon the hearing on the order to show cause why a receiver should not be appointed should be considered as all the testimony and evidence that would be adduced upon a trial of the cause upon the merits and that this cause should be taken as submitted on its merits on such testimony and evidence." On October 15, 1934, the trial court entered its finding and decree for plaintiff. The court found that the chattel mortgage to Moretta was "without legal consideration" and was executed "with the intention of hindering, delaying and defrauding" existing and subsequent creditors of Fabbri and Merlo; that the various acts of Monetta, Fabbri and Merlo in transferring and manipulating the restaurant property were fraudulent and were intended to hinder, delay and defraud creditors and void as to them; and that "all of the assets and chattels which were the property of defendants Merlo and Fabbri as a co-partnership doing business as the Miami Club Restaurant and all assets and chattels of defendant Miami Club Restaurant, a corporation, received by it from said co-partnership or which were at any time its property, and which were later transferred to defendant Moretta or to defendant New Miami Cafe, Inc., are held to be the property of defendant Miami Club Restaurant, a corporation, and subject to the claims of all of the creditors of defendants Merlo and Fabbri, a co-partnership, and Miami Club Restaurant, a corporation, who have or shall join in this suit." The receiver theretofore appointed was continued, etc., "so that the claims of all creditors joining hereby or who may hereafter join in, may be established," and discharged out of said property. Defendants appealed from this decree and the appeal bond fixed at $7500 was given and approved. The appeal was granted to this court.

We have made the foregoing rather lengthy review with the question of our jurisdiction of this appeal in mind and in an effort to state as clearly as possible the nature of the suit and the relief sought and granted. The purpose of the suit is to subject the restaurant fixtures and equipment to the payment of plaintiff's judgment and

the claims of other creditors similarly situated who join in the suit; that is, to make such claims an equitable lien or charge against the restaurant equipment and provide for the enforcement thereof. That is the relief sought and granted. Plaintiff's judgment was shown to be $261.85, two other judgment creditors joined in the suit; the judgment of intervenor Alex Mazzi being in the amount of $119 and that of intervenor Manewal Bread and Baking Company $590.28. The aggregate of these judgments to the payment of which the property is subjected by the decree is $971.13. If the claim of the intervenor Federal Brilliant Company in the amount of $1278.20 be added, the aggregate of the claims of all creditors shown by the record as joining in the suit is $2249.33.

Apparently the theory is that we have jurisdiction of this appeal on the ground that "the amount in dispute" (Sec. 12, Art. VI, Constitution of Missouri) exceeds $7500, the minimum of our monetary jurisdiction. We have repeatedly held that in a suit, such as this, seeking equitable relief and wherein the jurisdiction of this court over the appeal is dependent wholly upon "the amount in dispute," or the amount involved, such amount must be determined by the value in money of the relief to the plaintiff (and in this suit those joining with plaintiff in the suit), or of the loss to the defendant, should the relief be granted, or vice versa should the relief be denied. [Joe Dan Market, Inc., v. Wentz, 321 Mo. 943, 13 S. W. (2d) 641, 644, and cases there cited; Consolidated School District No. 2 of Clinton Co. v. Gower Bank (Mo.), 53 S. W. (2d) 280; Simplex Paper Corporation v. Standard Corrugated Box Co. (Mo.), 76 S. W. (2d) 1075.] Applying that rule it is apparent that the "amount in dispute," or involved, shown by this record does not give this court jurisdiction of the appeal.

The record does not affirmatively show the value of the restaurant equipment and furnishings at the time of the trial. We have noted that Fabbri stated: "I don't think everything in there (the restaurant) would bring over $3500 or $4000." Moretta said: "The whole place is not worth $15,000" but made no estimate of the then value of the property involved. We have also noted that the appeal bond herein was fixed by the court at $7500. However, under the circumstances of this case, though the value of the property which a receiver would take over were shown to exceed $7500 that fact does not vest this court with jurisdiction of the appeal herein. [Simplex Paper Corporation v. Standard Corrugated Box Co., supra.] The receiver would take, preserve and administer the property merely for the purpose and to the extent of satisfying thereout the claims of plaintiff and intervenors, as found by the court, which so far as this record shows is far less than the amount of our monetary jurisdiction, and affords the sole measure of the value, in money, of the relief sought and granted.

None of the prerequisites of our appellate jurisdiction affirmatively appearing the cause must be transferred to the St. Louis Court of Appeals. It is so ordered. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.