WEBSTER P. BUSHNELL, CHARLES C. McCANN and DONALD H. BUSHNELL, Doing Business as a Copartnership under the name of BUSHNELL & McCANN, Appellants, v. MISSISSIPPI & FOX RIVER DRAINAGE DISTRICT OF CLARK COUNTY and CHARLES KRUEGER, CHRISTIAN GRAF, J. W. DIENST, HARRY BENNETT and I. W. HOEWING, Supervisors of said MISSISSIPPI & FOX RIVER DRAINAGE DISTRICT.—102 S. W. (2d) 871.

Division One, March 17, 1937.

*J. E. Newkirk, Hiller & Hiller* and *T. L.* and *L. J. Montgomery* for appellants; *E. W. McManus* on brief.

*Rendlen, White & Rendlen* and *B. F. Jones* for respondents.

FERGUSON, C.—Webster P. Bushnell, Charles C. McCann and Donald H. Bushnell compose a copartnership under the firm name of Bushnell & McCann and ''are engaged in civil engineering.'' The Fox River Drainage District is a circuit court drainage district of Clark County organized in 1915 under the provisions of the statutes of this State, now Article 1, Chapter 64, Revised Statutes 1929, relating to the organization of drainage districts by circuit courts. Bushnell & McCann performed certain engineering services for the drainage district and on April 5, 1932, obtained a judgment therefore against the district, in the Circuit Court of Clark County, in the

amount of $6000 with interest at six per cent. On July 11, 1932, designating themselves therein as plaintiffs, the copartners filed a petition, in their own names, not in the name of the State to their use, in the Circuit Court of Clark County alleging the rendition of the judgment aforesaid in their favor, that execution had been issued thereon and returned "wholly unsatisfied," that they had demanded that the supervisors of the drainage district levy a tax "to pay said judgment" but that the supervisors had refused to do so, that they had no adequate remedy at law, and prayed that "a peremptory order of mandamus issue commanding said defendants forthwith to levy and collect a sufficient tax to pay said judgment with interest and costs," etc. The drainage district and the supervisors filed a return, designating themselves, as does the petition, defendants. The cause was tried on an "Agreed Statement of Facts." On December 10, 1934, the trial court entered judgment quashing its alternative writ of mandamus and denying the peremptory writ of mandamus prayed by the petition, from which judgment the plaintiffs appealed and the appeal was sent to this court.

An understanding of the issues herein requires a resume first of those provisions of the drainage statutes involved which relate to and authorize the levy of taxes or assessments against lands within the district. Section 10752, Revised Statutes 1929, provides, that "the board of supervisors . . . shall as soon as elected and qualified . . . levy a uniform tax of not more than fifty cents per acre upon each acre of land within such district . . . to be used for the purpose of paying expenses incurred or to be incurred in organizing said district, making surveys of the same and assessing benefits and damages and to pay other expenses necessary to be incurred before said board shall be empowered by subsequent provisions of this article to provide funds to pay the total costs of works and improvements of the district. In case the boundary lines of the district be extended . . . to include lands . . . not described and contained in the articles of association, the same uniform tax shall be made on such lands," etc. When the commissioners have filed their report assessing benefits and damages, and exceptions thereto have been heard and determined and the report, as modified, if so, is confirmed, Section 10759, Revised Statutes 1929, provides, that "the board of supervisors shall . . . levy a tax of such portion of said benefits on all lands," etc., "in the district to which benefits have been assessed, as may be found necessary by the board of supervisors to pay the costs of the completion of the proposed works and improvements . . . and in carrying out the objects of said district, plus ten per cent of said total amount for emergencies.". However, if "after determining the objections" to the report the court finds "that the estimated costs of works and improvements . . . exceed the estimated benefits, the court shall then render its decree,

declaring the incorporation of the district to·be dissolved as soon as all costs incurred, which shall include court costs and all obligations and expenses incurred in behalf of the district by the board of supervsiors shall have been paid, and if the uniform tax levied under the provisions of Section 10752 . . . be found insufficient to pay all such costs, the board of supervisors shall make such additional uniform tax levies as will be necessary to pay such deficiency." [Sec. 10781, R. S. 1929.] Provision is also made that the "incorporation" of such drainage district "shall be dissolved if, at any time before its board of supervisors has adopted a plan for reclamation, the owners, of a majority of the acres of land within said district petition the circuit court, . . . for a dissolution thereof." In which event "before dissolving said corporation" the court shall "ascertain and determine the amount of money in the treasury of, or owing to, said corporation" and the amount of unpaid warrants outstanding and debts and "other obligations owing by it" and if "the amount of money in the treasury and owing to said corporation is not sufficient" to pay its indebtedness the court "shall order said board of supervisors to levy and collect a uniform tax" upon the land within the district "sufficient in amount to pay said deficiency." [Sec. 10780, R. S. 1929.] The foregoing provisions constitute the whole of the statutory power given to the board of supervisors to levy a tax against lands within the district.

The following are the more pertinent facts taken from the "Agreed Statement of Facts." In 1915 the board of supervisors levied a uniform tax of fifty cents per acre on each acre of land in the district as authorized by what is now Section 10759, Revised Statutes 1929, supra, for the purposes designated by the statute. ."The major portion of said tax was collected and paid out, but there were and are a number of landowners in the district who failed and refused to pay" the fifty cents per acre tax, "and said taxes are yet unpaid." "No suit has ever been prosecuted in behalf of the district against said delinquent taxayers for said taxes." Commissioners were appointed to assess the benefits and appraise the damages "and their report was duly filed" in the Circuit Court of Clark County. "Numerous objections were filed to this report in the year 1920." The report was "apparently lost from the files of the court and cannot be found. No order has ever been entered in any court approving or disapproving this report." "No assessment, ascertainment or reestablishment of benefits and damages has ever been had or made." In July, 1929, the district, by written contract, employed plaintiffs, the copartnership of Bushnell & McCann, as engineers "to prepare an amended plan of reclamation" which required "entirely new surveys of the district and included hundreds of additional acres." The services rendered by plaintiffs in that connection are set out and acknowledged. In August, 1929, one McManus was employed, by the district, under

written contract, as attorney for the district. His legal services in connection with the preparation of the "amended plan of reclamation" and the proposal to extend the boundaries of the district are set out. "The amended plan of reclamation was never approved or carried into effect. The petition for enlargement and changes was denied by the circuit court." "No drainage works, drains, or reclamation structures of any kind have been made, or erected." In October, 1931, the board of supervisors agreed with Bushnell & McCann and McManus "in consideration" of "giving up their right to compensation under" their respective contracts the district would pay in full settlement for services under their contracts the sum of $4000 to Bushnell & McCann and the sum of $2000 to McManus. Subsequently McManus assigned "his claim under said compromise" to Bushnell & McCann who obtained the judgment in the Circuit Court of Clark County against the district, under date of April 5, 1932, for the full sum of $6000. "Said drainage district has never been dissolved by order of any court" and "the drainage district now has no funds with which to pay plaintiffs' judgment." No question is made as to the form in which the action was brought.

■ On this record we do not discover any ground of our jurisdiction of this appeal. "The first question to be decided by any court in any case is whether or not it has jurisdiction in point of fact." [Bealmer v. Hartford Fire Ins. Co., 281 Mo. 495, 220 S. W. 954.] The grounds of our appellate jurisdiction are defined by Section 12, Article 6, of our Constitution. The "amount in dispute," in a case of this kind, must be determined by the value, in money, to plaintiff of the relief sought but denied. [Matz v. Miami Club Restaurant (Mo.), 100 S. W. (2d) 476, and cases there cited.] That value is to be ascertained as of the date of the decree or judgment from which plaintiff has appealed. It does not affirmatively appear that the value, in money, of such relief to plaintiff, if then granted, would have been in excess of $7500 and within our pecuniary jurisdiction.

■ While the constitutional provision, supra, gives us appellate jurisdiction "in cases where a county or other political subdivision of the State . . . is a party," it has been held by this court, en banc, that a drainage district is not a political subdivision of the State in the sense in which that term is used in such constitutional provision. [Wilson v. King's Lake Drainage & Levee District, 237 Mo. 39, 139 S. W. 136.] In that case the court said: "The words 'other political subdivisions of the State' as used in Section 12, Article 6, following, as they do, the word 'county' mean such political subdivisions as may be created having powers similar to those of a county, and do not refer to townships, school districts. levee districts, drainage districts, and such like minor political subdivisions of the State." [See, also, Chilton v. Drainage District No. 8 of Pemiscot County, 332 Mo. 1173, 61 S. W. (2d) 744.]

Nor is this a case "involving the construction of the revenue laws" of this State" so as to give us jurisdiction on that ground. State ex rel. Broughton v. Oliver, 273 Mo. 537, 201 S. W. 868, was a suit by the county collector to enforce drainage district taxes or "special benefit assessments." This court held, that it did not have jurisdiction of the appeal on the ground that "the construction of the revenue laws of this State" was involved, and that laws providing for drainage district taxes or assessments "are not 'revenue laws of this State' within the meaning of Section 12 of Article 6 of the Constitution." It was then said: "These are laws which provide a means of paying for mere local improvements, and should not be classed with the 'revenue laws of this State' so as to fix jurisdiction in this court. When we speak of the 'revenue laws of this State,' we have reference to those laws by which revenue is raised for purely public governmental functions, and not to laws, the principal purpose of which is to furnish a means of payment of mere local improvements."

The case is not one "involving the construction of the Constitution of the United States or of this State" giving this court jurisdiction of the appeal on that ground. While the construction and application of certain sections of the drainage district statutes, heretofore cited, is invoked and involved neither the validity nor constitutionality of any statute is questioned by either of the parties. The record does not disclose that the trial court was called upon to do so or ruled a constitutional question. No constitutional question is raised or attempted to be preserved by the motion for a new trial and neither of the parties, by brief or argument, here presents or argues any such question.

It suffices to say that the record does not even remotely suggest any of the other grounds of our appellate jurisdiction which we have not mentioned. We do not, therefore, have jurisdiction of the appeal herein and the cause must be transferred to the St. Louis Court of Appeals. It is so ordered. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.