CHARLES M. HOWELL, JR., and FLOYD E. JACOBS, Doing Business Under the Firm Name of HOWELL, JACOBS & HOWELL, Appellants, v. DIVISION OF EMPLOYMENT SECURITY IN DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS OF THE STATE OF MISSOURI and MICHAEL J. CARROLL, Director Thereof, and CARL J. HENRY, ELMER JOHN KEITEL, SR., and HARRY P. DRISLER, Members of the UNEMPLOYMENT COMPENSATION COMMISSION OF MISSOURI, Respondents.—No 40906.—215 S. W. (2d) 467.

Division One, December 13, 1948.

*Lewis H. Cook, Howell, Jacobs & Howell, Floyd E. Jacobs* and *Dean Wood* for plaintiffs-appellants.

*George Schwartz* and *John L. Porter* for respondents; *Michael J. Carroll* of counsel.

[468] DALTON, C.—Action for judicial review of an order and decision of the Unemployment Compensation Commission (now Division of Employment Security) denying plaintiffs' application for termination of coverage under the Unemployment Compensation Law, effective January 1, 1943, and holding that plaintiffs did not cease to be an "employer" subject to the law, as of January 1, 1943. The trial court affirmed the order of the Unemployment Compensation Commission and plaintiffs have appealed.

The record shows that Charles M. Howell, Jr. and Floyd E. Jacobs, a co-partnership, doing business as Howell, Jacobs and Howell, became an "employer" subject to the Unemployment Compensation Law for the calendar year 1942; and that, on January 8, 1943, they

filed an application for termination of coverage as an "employer" subject to the law, as of January 1, 1943. The application stated that there had been only seven individuals in their employment during thirty-eight weeks of the year 1942 and only six in the remaining weeks of that year; and that appellants did not engage any contractor or subcontractor to perform any service for them, which service was part of their usual trade, occupation, profession or business. On March 19, 1943, the Commission approved the application, "subject to final [469] audit." Thereafter, on March 10, 1944, the Commission reconsidered its prior approval, denied appellants' application for termination of coverage and made an administrative determination that the partnership continued to be an "employer" subject to the law for periods after January 1, 1943.

Appellants petitioned for a hearing and reconsideration of the Commission's administrative determination and a hearing was had before Hon. Charles F. Moseley, special representative of the Commission. At the hearing, it was admitted that in 1942 the partnership had had seven named stenographic and clerical employees, who received stipulated salaries; and that the social security tax was paid by the firm on the salaries of these employees for each quarter of said year. It was further admitted that in 1942 the partnership had three "associates," to wit, Hon. C. P. LaMire; Hon. Scott R. Timmons and Hon. J. W. Broaddus, who received funds from the partnership; and that the partnership had paid unemployment compensation "contributions" for the year 1942, as stated. There was evidence that on February 28, 1942, the partnership had made a written report to the Commission for the purpose of determining liability under the Unemployment Compensation Law; and that this report, covering 52 weeks in 1941, showed ten employees for each week except one, when the number employed was nine. Evidence was heard at length concerning the relationship between the "associates" and the partnership. It will only be necessary to say that partnership contends that the "associates" were not "employees" of the partnership. The partnership did not report any of the "associates" as being in its "employment" and it paid no "contributions" on any payments from the partnership to them.

The report and findings of fact by the special representative stated that the issue presented turned upon "the employment status under the Unemployment Compensation Law of Scott R. Timmons and any other persons who may have been similarly associated with the applicant employer" during 1942. The special representative found that Mr. Timmons performed services for wages for the applicant employer throughout the year 1942; that such services were performed subject to the applicant employer's right to control them; that they were all performed in the usual course of the applicant employer's

business; that the major part of such services were performed in the applicant employer's place of business; that Mr. Timmons was not customarily engaged in an independently established trade, occupation, profession or business; and that the applicant employer in the year 1942 had eight or more persons (including Mr. Timmons) in employment for thirteen or more days, each day in a separate calendar week.

The findings of fact, as made by the special representative, were adopted by the Commission and the Commission ruled that Mr. Timmons was in the "employment" of the applicant employer throughout the calendar year 1942; and that "the applicant employer did not cease to be an employer subject to the Missouri Unemployment Compensation Law as of January 1, 1943." Application for rehearing was filed and overruled and, thereafter, the necessary steps were taken to present the cause to the Circuit Court, where the order of the Commission denying the application for termination of coverage was affirmed.

It is contended that the circuit court erred in affirming the decision of the Commission because the Commission did not have jurisdiction to reopen the case on March 10, 1944 and to deny the application for termination, in view of the order of approval of March 19, 1943 (Sec. 9432(A) (a) R. S. 1939, as amended Laws 1941, p. 566, Sec. 10); that upon the whole record Hon. Scott R. Timmons was not an employee in 1942; and that the application to terminate coverage should not have been denied after the case was reopened.

Our jurisdiction is not challenged, but it is our duty to determine that question, whether raised or not. Smith v. Santarelli, 355 Mo. 1047, 199 S. W. (2d) 411, 412. Both appellants and respondents contend that we have jurisdiction of this appeal [470] because Hon. Michael J. Carroll, the Director of the Division of Employment Security, is a state officer and is a party respondent herein. In the recent case of Parker v. Unemployment Compensation Commission et al., No. 40, 786, 358 Mo. 365, 214 S. W. 529, it was held that the Division of Employment Security, as a legal entity, was the proper party defendant in a proceeding for judicial review and not the director. The director had attempted to enter his appearance in his official capacity as a party in that case, as here, and the court held that such entry of appearance should be treated as that of the Division itself; and that no state officer was a proper party to the action. Without reviewing that opinion further we hold that no state officer is a proper party to this proceeding and we cannot take jurisdiction of this appeal on such ground.

Respondents, however, further contend that we have jurisdiction on the ground that the construction of one of the "revenue laws of this state" is involved. Art. V, Sec. 3, Const. of Missouri, 1945. Respondents' theory is that the issue presented is whether appellants

"remained subject employers, and as such remained liable for the unemployment compensation tax." While this is not an action for the collection of "contributions" under Sec. 9436(h) R.. S. 1939, as amended, Laws 1943, p. 917, and Laws 1947, Vol. 2, p. 421, respondent insists that "the right to tax is directly at issue"; and that the case "cannot be decided unless the revenue law is construed."

The ultimate issue determined by the Commission was the status of appellants as an "employer" under the Unemployment Compensation Law; and that appellants' status as such "employer" did not terminate on January 1, 1943, but continued thereafter. Sec. 9428 R. S. 1939, as amended, Laws 1941, p. 566 and Laws 1943, p. 917. Before making that determination, the Commission had set aside its prior order. While it is true that, if appellants are an "employer" under the law they have become liable for such "contributions" as may have accrued, nevertheless this is not an action to recover such contributions. The mere fact that "contributions" required to be paid under the Unemployment Compensation Law may have accrued, if there has been no termination of coverage, does not require a holding that a construction of the revenue laws of this state is involved.

Article V, Sec. 3 of the Constitution, supra, uses the words, "the construction of the revenue laws of this state," and we must determine the meaning of the word "revenue laws of this state" as used in this section of the Constitution. In doing so we shall first consider how the word "revenue" is used in other sections of the Constitution of 1945. Art. IX, Sec. 3 of the same Constitution provides, with reference to the "allotment of State Revenue for school purposes," that "in no case shall there be set apart less than twenty-five per cent of the state revenue, exclusive of interest and sinking fund, to be applied annually, to the support of the free public schools." Art. III, Sec. 36, provides that "all revenue collected and money received by the state shall go into the treasury and the general assembly shall have no power to divert the same or to permit the withdrawal of money from the treasury, except in the pursuance of appropriations made by law." Art. III, Sec. 37, makes certain exceptions to the prohibition against the general assembly's power and authority to contract liability, including the one based "on the recommendation of the governor, for a temporary liability to be incurred by reason of unforeseen emergency or casual deficiency in revenue." Art. IV, Sec. 15, provides that the state treasurer shall be the custodian of all state funds, towit, that "all revenue collected and moneys received by the state from any source whatsoever shall go promptly into the state treasury." Art. IV, Sec. 22, provides for a department of revenue; that the department of revenue shall be in charge of a director of revenue; and that "the division of collection shall collect all taxes, licenses and fees payable to the state," with certain exceptions not material here. Art. IV, Sec. 24, concerning the Governor's budget and recommendations

as to revenue, refers to "his recommendations of any laws necessary [471] to provide revenues sufficient to meet the expenditures." We need not refer to other sections using the word "revenue."

In the case of State ex rel. Gass v. Gordon (En Banc), 266 Mo. 394, 181 S. W. 1016, the court construed the words "ordinary revenue" as used in an appropriation act for school purposes and in Art. 11, Sec. 6 of the Constitution of 1875, the court said: "We are convinced therefore that the word 'revenue,' as used in the appropriation act under discussion, when standing alone, and when not modified by the word 'ordinary' (which we shall later discuss, when we come to sum up our conclusions), means: The annual and current income of the state, however derived, which is subject to appropriation for general public uses. This excludes such income as the Constitution, or any permanent existing law, may specifically devote to a special purpose, in contradistinction to a general public use, or which is not required to be paid into the state revenue fund but into a special fund . . . Taking the two words together, then, as they occur both in our Constitution and in the appropriation act before us, and being guided by both their lexical and legal meanings as well as the construction urged on us by the necessity for formulating a fixed and general rule, we conclude that the words 'ordinary revenue,' as used in said section 6 of the Constitution and in the act under discussion (section 1, p. 89, Laws 1915), mean: The regular and usual annual income of the state, however derived, which is subject to appropriation for general public uses."

In the case of State ex rel. Hadley v. Adkins, 221 Mo. 112, 118, 119 S. W. 1091, in construing Sec. 12, Art. 6 of the Constitution of Missouri, 1875 this court said: "From a review of the cases we conclude: (1) That when our jurisdiction is put upon the ground that the construction of the revenue laws of the State is involved, the law up for construction must be a State law as contradistinguished from the provisions of a special city charter; (2) that it makes no difference where the law is to be found, whether under the title of 'revenue' or any other title, so long as it relates to the subject-matter of revenue; (3) that the revenue must be directly and primarily concerned, not merely indirectly or as an incident; (4) that the term 'revenue law' covers and includes laws relating to the disbursement of the revenue and its preservation as well as provisions relating to the assessment, levy and collection of it; and (5) finally, that where the question in the case is merely one relating to the general practice in circuit courts or before justices of the peace, although the case may pertain to the collection of taxes, yet the revenue laws are not involved in a constitutional sense."

Few cases dealing with the matter of jurisdiction undertake to define the term "revenue." The case of State ex rel. Broughton v.

Oliver, 273 Mo. 537, 201 S. W. 868, was a suit by a county collector to enforce drainage district taxes or "special benefit assessments." This court held that it did not have jurisdiction of the appeal on the ground that "the construction of the revenue laws of this state" was involved, and that laws providing for drainage district taxes or assessments "are not revenue laws of this state within the meaning of section 12 of article 6 of the Constitution (1875)." It was then said: "These are laws which provide a means of paying for mere local improvements, and should not be classed with the 'revenue laws of this state' so as to fix jurisdiction in this court. When we speak of the 'revenue laws of this state,' we have reference to those laws by which revenue is raised for purely public governmental functions, and not to laws the principal purpose of which is to furnish a means of payment for mere local improvements." The court then referred to "(1) Revenues for public governmental purposes, and the assessment, collection, and expenditure thereof; and (2) special assessments and their collection and expenditure." (201 S. W. 868, 870). See, also, State ex rel. Martin v. Childress, 345 Mo. 495, 134 S. W. (2d) 136, 139; Pearson Drainage District v. Erhardt (Mo. Sup.), 196 S. W. (2d) 855; St. Ferdinand Sewer District of St. Louis County v. Turner, 356 Mo. 804, 203 S. W. (2d) 731, 732; Chilton v. Drainage District No. 8 of Pemiscot [472] County, 332 Mo. 1173, 61 S. W. (2d) 744, 745; Bushnell v. Mississippi & Fox River Drainage District, 340 Mo. 811, 102 S. W. (2d) 871, 874.

While this court has held that the "contributions" required under the Unemployment Compensation Law are taxes and that the act includes a taxing statute (Lucas v. Murphy, 348 Mo. 1078, 156 S. W. (2d) 686, 688; A. J. Meyer & Co. v. Unemployment Compensation Commission, 348 Mo. 147, 152 S. W. (2d) 184, 191; Henry v. Manzella, 356 Mo. 305, 201 S. W. (2d) 457, 459), this court has not held that the "contributions" required under the Unemployment Compensation Law constitute "revenue" of this state, or that the Unemployment Compensation Law is a "revenue law of this state" as those words are used in Art. V, Sec. 3 of the Constitution of Missouri, 1945. The mere fact that the Unemployment Compensation Law contains a taxing statute does not require such a holding. Although the "contributions" provided for under the Unemployment Compensation Law are imposed under an authority derived from the legislature and they are an enforced contribution to the public welfare, it does not follow that the "contributions" constitute "revenue of this state" or that the construction of the Unemployment Compensation Law involves a construction of a revenue law of this state. State ex rel. Broughton v. Oliver, supra.

A brief consideration of the provisions of the Unemployment Compensation Law clearly shows that it was not intended that the enforced "contributions" required under the provisions of that law

were intended to be or constitute state revenue. In the case of Krisman v. Unemployment Compensation Commission, 351 Mo. 18, 171 S. W. (2d) 575, 578, this court referred to the act and said: "This Act provides a paternalistic system of protection for the employee, not only for his individual benefit, but for the general welfare." Certain provisions of the law are then discussed at some length. Some of the reasons for the passage of the act are referred to in Murphy v. Hurlbut Undertaking & Embalming Co., 346 Mo. 405, 142 S. W. (2d) 449, 454. Specific provisions of the Unemployment Compensation Law, however, show its purpose and plan of operation.

Section 9422 R. S. 1939, as re-enacted Laws 1947, Vol. 2, p. 390, refers to the law as one enacted "under the police powers of the state, for compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." Reference is made to "its purpose to promote security against unemployment . . . in providing for the payment of compensation to individuals in respect to their unemployment through the accumulation of reserves."

Section 9423(f) R. S. 1939, as amended Laws 1943, p. 917 and Laws 1947, Vol. 2, p. 391, defines "contributions" as "the money payments to the Unemployment Compensation fund required by this law, exclusive of interest and penalties." Subdivision (k) of the same section defines "fund" as "the unemployment compensation fund established by this law, to which all contributions required and from which all benefits provided under this law shall be paid." Section 9427 R. S. 1939, as amended Laws 1947, Vol. 2, p. 403, provides that payment of "contributions" shall be made to the Treasurer designated under Sec. 9433 (by the Commission). Provision is further made that "the division shall maintain a separate account for each employer, and shall credit his account with all contributions which he has paid on his own behalf. . . . Benefits paid to an eligible individual shall be charged against the accounts of the base period employers in the inverse chronological order in which the employment of such individual occurred . . . " Subdivision (c)(3)(B) of the same section provides how the employer's rate "shall be determined on the basis of his own record up to the calculation date." Section 9433 R. S. 1939, as amended Laws 1941, p. 566, provides that "there is hereby established as a special fund, separate and apart from all public moneys or funds of this state, an unemployment compensation fund, which shall be administered by the Commission as exclusively for the purposes of [473] this law." The section further provides that the designated treasurer and custodian of the fund shall "maintain within the fund three separate accounts." As to one of these accounts the section provides that, under the conditions therein set out, certain money shall be "deposited with the Secretary of the Treasury of the United States of America to the credit of the account of

this state in the unemployment trust fund . . . any provisions of law in this state relating to the deposit, administration, release, or disbursement of state moneys in the possession or custody of the State Treasurer to the contrary notwithstanding.'' The same section further provides with reference to moneys requisitioned from the Missouri account in the federal unemployment trust fund solely for the payment of benefits or refunds that ''expenditures of such moneys in the benefit account and refunds from the clearing account shall not be subject to any provisions of law requiring specific appropriations or other formal release by state officers of moneys belonging to this state in their custody.'' Section 9436 R. S. 1939, as re-enacted Laws 1947, Vol. 2, p. 418, 421, subdivision (h) provides that, ''if any employer defaults in the payment of contributions or interest thereon, the amount due shall be collected by civil action in the name of the division administering this law.'' It is not necessary to refer to other sections of the Unemployment Compensation Law. The ''contributions'' required to be paid under the provisions of this law do not constitute ''revenue'' of this state as the word ''revenue'' is used in Art. V, Sec. 3 and other provisions of the Constitution, nor as otherwise defined by the decisions of this court. The funds so collected are clearly ''not subject to appropriation for general public uses.'' State ex rel. Gass v. Gordon, supra. Nor does a determination of the issues presented by this appeal as to the status of the appellants as an ''employer'' under the Unemployment Compensation Law, after January 1943, or as to the jurisdiction of the Commission to set aside its prior order and enter another, involve the construction of any revenue law.. As in the case of White v. State Social Security Commission, 345 Mo. 1046, 137 S. W. (2d) 569, no particular amount, even of ''contributions,'' is involved, since the sole questions concern the status of appellants as an ''employer'' under the law, after January 1, 1943, and the jurisdiction of the Commission to set aside the order of March 19, 1943 and enter the order of March 10, 1944.

To vest this court with jurisdiction on the ground that the construction of state revenue laws is involved, the construction of revenue laws must be directly and primarily concerned in the litigation and not merely indirectly or incidentally concerned. State ex rel. Miller v. Board of Education (Mo. Sup.), 18 S. W. (2d) 26, 27. The provisions of the Unemployment Compensation Law here under consideration are not revenue laws. Compare, State ex rel. Parish v. Young, 327 Mo. 909, 38 S. W. (2d) 1021, 1022; State ex rel. Divine v. Collier, 301 Mo. 72, 256 S. W. 455; Wright County ex rel. Elk Creek Tp. v. Farmers' & Merchants' Bank (Mo. Sup.), 30 S. W. (2d) 32; State ex rel. School District No. 87 v. Shuck, 273 Mo. 50, 199 S. W. 975; White v. State Social Security Commission, supra; Kansas City Exposition Driving Park v. Kansas City, 174 Mo. 425, 74 S. W. 979.

We do not have jurisdiction of this appeal on either of the grounds suggested, nor does the record show appellate jurisdiction in this court on any other ground. The case should be transferred to the Kansas City Court of Appeals.

It is so ordered. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.