HARRY E. KRISMAN, doing business as KRISMAN-FREY JEWELRY COMPANY, Appellant, v. UNEMPLOYMENT COMPENSATION COMMISSION OF MISSOURI, ELMER J. KEITEL, SR., Chairman, ANDREW J. MURPHY, SR., and HARRY P. DRISLER, Members, and IDA GERSHEN, Claimant.—No. 38278.—171 S. W. (2d) 575.

Division One, June 1, 1943.

*Joseph Boxerman* and *Louis E. Zuckerman* for appellant.

20

*George A. Rozier,* Chief Counsel, and *Edward D. Summers,* Assistant Counsel, for respondents; *Harry G. Waltner, Jr.,* of counsel.

CLARK, J.—This proceeding involves a construction of portions of the Unemployment Compensation Law (Art. 2, Chapter 52, R. S. Mo. 1939; Mo. R. S. A., pp. 45-131) which, for sake of brevity, will hereafter be [577] referred to as the Act. The proceeding was commenced by the filing of a claim with the Unemployment Compensation Commission by one Ida Gershen, on April 3, 1940. A Claims Deputy determined that claimant was entitled to benefits in the amount of $5.00 per week until a total of $18.55 was paid. This determination was made on the basis of claimant's earnings while employed by others than appellant. The determination was shown to claimant on April 17, 1940, but was not delivered to her until June 17, 1940. On the same day she appealed to an Appeals Referee on the ground that the determination did not include a consideration of her earnings while she was employed by appellant who, she contended, was subject to the Act. Evidence was heard and continuances taken from time to time. On September 26, 1940, claimant attempted, in writing, to withdraw her appeal, but permission to do so was refused by the Referee. On September 27, 1940, the Referee made his decision, based on claimant's employment by appellant and other employers, holding that claimant was entitled to benefits in the sum of $8.00 per week until a total of $76.15 be paid. The appellant, Krisman, appealed to the Commission from the decision of the Referee. After several

hearings the Commission, on June 21, 1941, sustained the decision of the Referee. Appellant filed a petition for judicial review in the circuit court where the decision and finding of the Commission was sustained in May, 1942, and Krisman has appealed to this court.

Appellant's contentions are substantially as follows: (1) claimant's appeal from the Deputy to the Referee was not timely because taken more than five days after she had actual notice of the decision of the Deputy; (2) jurisdiction was lost by the withdrawal of her appeal by claimant; (3) the finding and decision of the Commission is not supported by substantial competent evidence; (4) there was no showing that claimant was entitled to any benefits under the Act from her last employer, Commercial Letter Company; (5) that the decision of the Commission and of the circuit court are contrary to the ''due process'' clauses of the state and federal constitutions, and portions of Section 9423 of the Act, under which those decisions were rendered, are void because in conflict with said constitutional provisions.

█ Was claimant's appeal from the Deputy to the Referee timely? Section 9432 reads in part as follows:

''The deputy shall promptly notify the claimant and any other interested parties of the decision and the reasons therefor. The deputy may for good cause reconsider his decision and shall promptly notify the claimant and other interested parties of his amended decision and the reasons therefor. Unless the claimant or any such interested party, within five calendar days after the delivery of the deputy's notification, or within seven calendar days after such notification was mailed to his last known address, files an appeal from such decision, such decision shall be final and benefits shall be paid or denied in accordance therewith . . .''

The claim record card signed by claimant states that she had, on April 17, 1940, seen the Deputy's determination of her claim. Appellant contends that the statute above quoted required her appeal to be taken within five days from that date. We do not so read the statute. Until the claimant was officially notified of the decision of the Deputy, either by personal delivery or mail, she had no right of appeal. Until then the decision was merely tentative and subject to amendment. The Deputy's return shows that he delivered his determination to the claimant on June 17th. She appealed the same day and that is full compliance with the statute.

█ We do not agree with appellant in his contention that jurisdiction was lost by claimant's attempted withdrawal of her appeal. None of the authorities cited by appellant on this point refer to the Act now under consideration.

Section 9432 (c) of the Act contains this language: ''Unless such appeal is withdrawn, •an Appeal Tribunal, after affording the parties reasonable opportunity for fair hearing, shall affirm, modify or reverse the findings of fact and decision of the deputy . . .''

Appellant places great stress on the language: "Unless such appeal is withdrawn," but we do not think that such language confers an absolute right on a claimant to withdraw his appeal, especially when considered with other provisions of the Act. Even in an ordinary case a litigant has no absolute right to dismiss or withdraw where such action would injuriously affect other interested persons. [State ex rel. v. Wurdeman, 309 Mo. 341, 274 S. W. 380.] There are stronger reasons why such absolute right should not exist in proceedings under the Act now being [578] considered. This Act provides a paternalistic system of protection for the employee, not only for his individual benefit, but for the general welfare. Section 9437 (a) says: "Any agreement by an individual to waive, release, or commute his rights to benefits or any other rights under this law shall be void." The Act contains many similar provisions. It also provides [Section 9432 (f)] that: "The manner in which disputed claims shall be presented and the conduct of hearings and appeals shall be in accordance with regulations prescribed by the commission for determining the rights of the parties, whether or not such regulations conform to common law or statutory rules of evidence and other technical rules of procedure . . ." Pursuant to the last mentioned provision, the Commission has adopted a regulation providing, among other things, "that the withdrawal of an appeal whether by stipulation or otherwise, shall always be subject to the approval of the appeal tribunal." We think this is a reasonable and valid regulation. The claimant is not the only person interested in this proceeding. The general public is interested in building up a fund to provide for involuntary unemployment and in seeing that all employers who rightfully belong under the Act are made to comply with its provisions. Then, too, the Act [9427 (c) (1)] contains certain provisions under which an employer who has a good employment record, in that few or none of his employees become unemployed, is entitled to a reduced rate of contributions. The Commission is required to keep an account for each employer and benefits paid to an unemployed person are charged against the account of his employers in the inverse chronological order in which the employment of such person occurred commencing with his last employer. Thus, if a claimant has been employed by successive employers during the period for which his wage credits are computed, and his benefits are charged against the accounts of only a part of such employers, they will be unjustly affected as to the rate of contributions they will be required to pay.

Appellant contends that the Commission's finding of facts is not based upon substantial competent evidence. Much of his argument on this point is a complaint as to incidental facts found by the Commission, not the ultimate facts upon which the award can be predicated as a matter of law. The evidence which supports the ultimate facts is what concerns us on this appeal, as we held under a similar provision

in the Workmen's Compensation Law. [Leilich v. Motor Co., 328 Mo. 112, 40 S. W. (2d) 601.]

 It is undisputed that claimant is eligible for some benefits. Nor can it be denied that she worked for appellant, although he testified that he had no record as to how.she was paid. The question remains as to whether appellant was an employer within the meaning of Section 9423 (h) of the Act, which reads as follows:

"(h) 'Employer' means;

"(1) Any employing unit which for some portion of a day, but not necessarily simultaneously, in each of twenty different weeks, whether or not such weeks are or were consecutive, within either the current or the preceding calendar year, has or had in employment, eight or more individuals irrespective of whether the same individuals are or were employed in each such day;

"(4) Any employing unit which, together with one or more other employing units, is owned or controlled by legally enforceable means or otherwise, directly or indirectly, by the same interests, or which owns or controls one or more other employing units by legally enforceable means or otherwise, and which, if treated as a single unit with such other employing units or interests, or both, would be an employer under paragraph (1) of this subsection;"

The Commission did not find that appellant individually had eight or more persons in employment on some portion of a day in each of twenty different weeks during either the year 1938 or 1939, during which claimant worked for him. But the Commission did find that appellant's business and other employing units owned or controlled by him, when treated as a single unit, had the required employment experience to render appellant subject to the Act.

Many hearings were held by the Commission and its agents. In its brief, respondent charges appellant with a deliberate attempt to prevent a decision on the merits and the record seems to furnish some basis for the charge. Appellant's records were not in compliance with the Act. He sent an employee to claimant to induce her to withdraw her appeal and to pay her for so doing. It was with great difficulty that appellant's testimony was [579] procured and his evidence does not seem altogether frank. Yet we think his own testimony, supplemented by the reasonable inferences to be drawn therefrom, sustains the finding of the Commission as to the material facts. Appellant was in the jewelry business in the Victoria Building in St. Louis under the name of Krisman-Frey Jewelry Company. In this business appellant had at least six employees throughout all that part of 1938 beginning with June 18 and ending with December 31, and had seven employees full time from July 29 to the end of the year. This evidence supports the Commission's finding that appellant, doing business as Krisman-Frey, had at least six employees on some portion of a day in each of twenty different weeks of the calendar year 1938.

Two corporations, Gift Chest Stores, Inc., and Millards, Inc., had employees and did business in the same offices with appellant in the Victoria Building. Appellant's testimony shows that Gift Chest Stores had at least two full time employees throughout 1938. Millards did not begin business until in October, 1938. It is unnecessary to review the evidence as to the number of persons employed by the three concerns during 1939, for it is clear that appellant and Gift Chest Stores together had the requisite number of employees during 1938 and, if they are to be considered a single employing unit under appellant's control, appellant would remain an employer until he terminated his coverage in accordance with Section 9428 of the Act.

Did appellant control the two corporations, Gift Chest Stores and Millards, in such manner as to make them a single employing unit within the meaning of the Act? Gift Chest Stores is an Illinois corporation. It operates a retail jewelry business at Farmington, Missouri, and stores in other states. According to the stock books appellant and his wife each own one share of stock and the remaining ninety-eight shares stand in the name of M. I. Lewis, who is a brother-in-law of appellant. Appellant's own testimony shows that Lewis took no part in the management and was not actively engaged in the business of this corporation; that appellant hires the employees, signs all checks and he alone has authority to make reports, etc. The finding of the Commission recites that a report filed on February 16, 1939, signed by M. Bucove as general manager, stated that Gift Chest Stores is owned by appellant. Appellant denied ownership of this corporation and said Bucove "did not have any authority to sign reports in my absence." Bucove was listed as an employee on the payroll of Gift Chest Stores. Appellant was shown an unsigned report, dated June 13, 1940, stating that the stock in Gift Chest Stores was owned by appellant, president, 45 per cent, by M. Bucove, vice-president, 30 per cent and by M. I. Lewis, secretary, 25 per cent. Appellant denied the correctness of this report, but admitted he did not know whether he gave such information to an agent of the Commission or not. Millards is an Iowa corporation conducting retail clothing stores in Missouri and Iowa. Substantially all the stock is owned by appellant and his wife as joint tenants, and appellant in his testimony referred to Millards as the "clothing department." These corporations had employees in the same rooms occupied by appellant in conducting his business as Krisman-Frey Jewelry Company. Appellant hired all employees for each concern, signed all checks to pay them and had sole authority to make reports. The same employees performed services for all three concerns and sent out advertising matter for all three in the same envelopes. We think that appellant's own testimony furnishes ample support for the finding of the Commission that appellant actually controlled and operated all three concerns as a single employing unit. [Murphy v. Doniphan Tel. Co., 347

Mo. 372, 147 S. W. (2d) 6.16; Kellogg v. Murphy et al., 349 Mo. 1165, 164 S. W. (2d) 285, and cases cited.] Appellant says that the Doniphan Telephone case and the Kellogg case conflict with each other. We think that the cases are in harmony as explained in the Kellogg case, 164 S. W. (2d) l. c. 292. The evidence in the instant case, as to actual control and operation as one employing unit, is stronger than in either of the cases cited. In fact, the evidence shows that appellant actually owned the Millards corporation and the unincorporated Krisman-Frey business, and justifies an inference that he also owned Gift Chest Stores. Certainly he exercised actual and complete control over all three concerns and operated them as one unified business so as to bring him under the Act as construed by our cases above mentioned.

Appellant says the finding of the Commission cannot be sustained because the claim shows that the last employer of [580] claimant was the Commercial Letter Company, and there was no showing that she was entitled to benefits from her said last employer. It is difficult to understand just what appellant means by this contention. He cites Section 9427 (c) (1) of the Act and emphasizes the language requiring benefits to be charged inversely to claimant's employers "commencing with his last employer." That, of course, means the last employer and other employers *who are under the Act*. It certainly does not mean that an employee who becomes eligible for benefits will lose his rights by later accepting temporary employment from an employer who has an insufficient number of employees to bring him under the Act. Appellant also cites Hartwig-Dischinger Realty Co. v. Unemp. Comp. Comp., 350 Mo. 690, 168 S. W. (2d) 78. That case is not in point. There the question was whether the claimant was the employee of the Hartwig-Dischinger Company or of another company.

Appellant cites no authority, in support of the constitutional question raised, or attempted to be raised, by him. The point was decided against the same contention in Kellogg v. Murphy, supra, and we adhere to the ruling in that case.

For the reasons stated, the judgment is affirmed. All concur.