Vesta CROSS, Plaintiff-Respondent,

v.

INDUSTRIAL COMMISSION of Missouri, a Division of the Department of Labor and Industrial Relations; June R. Rose, George W. Wise and Chas. E. Cates, Members, and Division of Employment Security, Defendants-Appellants.

No. 8077.

Springfield Court of Appeals, Missouri.

Aug. 9, 1962.

Gordon P. Weir, George Schwartz, Jefferson City, for appellant Division of Employment Security.

Lloyd G. Poole, Jefferson City, for appellant Industrial Commission.

Moore, Pettit & Steinle, J. Hal Moore, Aurora, for claimant-respondent.

McDOWELL, Judge.

This is an appeal from an order and judgment of reversal and remand rendered in an action to review the decision of the Industrial Commission of Missouri, Division of Employment Security, denying unemployment benefits to claimant.

Claimant, Vesta Cross, filed her initial claim under the Missouri Employment Se-

curity Law effective February 28, 1960, and, thereafter, claimed benefits through September 17, 1960. A deputy determined that claimant was ineligible for benefits from July 31st to August 17, 1960, based on a finding that she was not available for work. Claimant appealed from the deputy's determination September 1, 1960, claiming she had contacted all place that she felt she could handle work and had been available at all times; that she cannot drive to work at a lower wage scale.

A hearing was had September 28, 1960, before an Appeals Referee. Evidence was heard, findings made and the deputy's decision affirmed. Application to have the decision of the Appeals Tribunal reviewed by the Industrial Commission was filed October 19, 1960. The application for review stated that the Referee's decision was not supported by sufficient legal facts and testimony.

The Commission's decision, dated February 3, 1961, modified the Appeals Tribunal's decision and denied claimant benefits from July 31, 1960 to September 17, 1960. The instant action for review was thereafter instituted. The reviewing Circuit Court found that the decision of the Industrial Commission of Missouri was unsupported by competent and substantial evidence and ʀeversed and remanded the cause to the Commission for further proceedings according to law.

On October 12, 1961, the Division of Employment Security and Industrial Commission of Missouri appealed to this court.

The full record of this appeal consists of the transcript of the Circuit Court proceedings and a transcript of administrative proceedings. In our opinion we will refer to the Industrial Commission of Missouri as the "Commission"; the Division of Employment Security as the "Division", and to respondent, Vesta Cross, as "claimant", the terms used in the administrative proceedings.

Claimant testified that she is not employed at the present time; that she lives on Route 1, Marionville, Missouri; that her last employment was with Western Light & Telephone Company where she had worked for ten years as telephone operator, both local and long distance; that her employment was terminated February 25th this year; that she is 52 years of age and the last wages she received was $1.39 per hour. She said this was the only type work she had ever done; that she completed her Sophomore year in school. She testified she had not worked since February 27th of this year; that during the weeks for which she filed claims subsequent to July 31st she had been physically able to work during each of those weeks for which she filed claims; that during those weeks she had tried to get work; that she had applied at the stores, ABC Store in Aurora as a salesclerk. She gave this testimony:

"Q. What would have been the lowest wage you would have accepted? A. One dollar an hour."

She testified she wanted to work; that she had had no experience at sales work; that during the weeks under review she tried to get work twice each week. She testified:

"Q. Why did you try to get work at only two places each week if you wanted work, Mrs. Cross? A. Well, * * * Just to try to get a position of some kind."

She stated she had listed on the back of her weekly claim forms the places where she had tried to get work each week and that she visited all the places. She listed on her claim card for the week of August 6th the names of Dryer's Shoe and Western Light & Telephone. She stated her applications for work were just made orally; that she just went to the places. She said if she had gotten employment at Dryer's Shoe Company she did not know what the starting wage would be. On the back of her claim form for week ending August 13th she listed Hughes Drug and Western Light & Telephone Company. She did not know but thought the starting wage at

Hughes Drug was fifty cents an hour. Her claim form ending August 20th listed Aurora Hospital and Hubbs Propane. She did not know the starting wage. She stated she had applied for work as a PBX operator. She admitted that workers at this job donated their services but stated she applied for a salaried job. On her claim for the week ending August 27th she listed the names of Dryer's Shoe and Western Light & Telephone Company. These are the same two places where she had previously applied. For the week ending September 3rd she listed Bradford Surridge, a funeral home in Marionville, where she applied for a job as receptionist. She admitted they did not have full time receptionists but thought they might have. She stated she lived near Marionville. She also listed ABC Store in Aurora, a dry goods store, for clerk work. She testified that on the week ending September 10th she had listed Hughes Drug which was the same store where she had previously applied and she listed Ben Franklin Store where she applied for work as a clerk. She did not know the starting wage at these places. On her card for the week ending September 17th she listed McWade Jewelry and Rowland Store, applying for job as clerk in both places but she did not know the starting wage. She gave this testimony:

"Q. Do you know generally what the starting wage is in the type of businesses where you applied for work? A. No, I really don't."

Her testimony was that there was nothing to prevent her from accepting work during any of the weeks for which she filed claims.

Claimant stated she lived on a farm of 180 acres; that her hours, while at the Telephone Company, were from 6:30 in the morning until 3:30 in the afternoon and this employment did not interfere with her farm operations; that she could have taken a job as clerk in a retail store, even though it required standing. She said her work at the telephone office was a sitting job; that she couldn't stand all the time because she had trouble with her feet.

On examination by her attorney she testified she had tried to get employment at thirteen different places while drawing unemployment compensation; that she also inquired about work from her friends and acquaintances. She testified that she asked at the Division of Unemployment about work; that they didn't have anything except they did call her to go to the chicken plant but she couldn't do that work; that she could not stand on concrete floors and besides it made her sick to be around that kind of work. She said if she had gone to work there they only had about two weeks work; that the plant closed down shortly after she had been told about it.

Her evidence is that she had never worked in a chicken plant, factory or anything like that before; that the only work she had ever done was for the telephone company except one time she worked a short while at a shirt factory in Marionville. She stated she tried to get employment in business places in Aurora and would have accepted work even if the wage was less than a dollar an hour.

Mr. Cummings testified that he is employed by the Missouri Division of Employment Security, as manager of the Monett office and has been so employed for fifteen years. He stated that his work consisted primarily of application taking, classification according to experiences and interests and training, determination of wage or type of work restrictions, the information that is necessary to give consideration to applicants for jobs, trying to match the worker classifications and qualifications with those of the employer's job orders. He stated that his service primarily was in Barry and Lawrence Counties, which includes Aurora, Marionville, Billings and other towns in that area.

He stated he was acquainted with the condition of labor in those areas; that he serviced the major employers in Aurora, those being the Juvenile Shoe Corporation

of America, two plants; that there are also approximately five or six major plants or industries there, including Midwest Map Company, employing some 110 to 115 people; Producers Creamery, with some 100 people; a garment industry with around 25 to 30 people; a plant in Marionville employing some 55 people. There is an electrical appliance manufacturing company with some 130 employees and other smaller plants and service establishments. He testified that he determines something of the rates being paid for work. In Aurora proper starting wage rates for sales and service establishments vary from fifty cents per hour to $35.00 per week; that factory production jobs start somewhere around an average of $1.00 an hour with most companies having a periodic increase or incentive rate—piecework rates thereafter. He listed five major plants in Aurora and testified there were other smaller plants. He stated the other places of business would include generally those where Mrs. Cross said she had applied for work. He admitted he talked to claimant about jobs in places he had named. He testified that claimant told him she preferred saleswork at a minimum rate of $1.39 an hour. This conversation took place August 15th.

On cross examination the witness admitted he did not know what the businesses paid for their help where claimant had applied. He testified that among the employers in Aurora who were seeking help was Southwest Manufacturing Company, a shoe factory. He also named Uncle Zeke's. He said he had a standing order at the present time for work as waitresses, cooks, dishwashers and general type of work found in a restaurant; that the prevailing type of this kind of work was fifty cents per hour and up, depending on experience.

The Commission examined the record of this claim, reviewed the evidence and appropriate provisions of the law and entered its finding as follows, to-wit:

"For ten years or until September 27, 1960, the claimant worked as a central office operator in a telephone exchange in Aurora, Missouri. She is 52 years of age. She was laid off for lack of work at the time the telephone exchange was converted to dial system. The claimant's last rate of pay was $1.39 an hour. She has had no other significant employment experience. She completed two years of high school education.

"The claimant resides on a farm a few miles from Aurora, Missouri. She has transportation to and from work in Aurora where she prefers to secure employment. Aurora, Missouri, has a population of about 4,500. During the weeks under review the claimant applied for work at only two places on one day in each week. She applied for work at some of the places on several previous occasions. During the seven weeks under review the claimant applied for work at nine different establishments. She testified that she inquired for work as a sales clerk, as a receptionist, as an office clerk and as a PBX operator. She further stated that she was willing to accept work at the prevailing wage. There are several factories in Aurora where many women are employed, but the claimant did not apply for work at such places because she believed that she would not be hired because of her age. She made no inquiries for work at any of the restaurants at Aurora. The claimant made one inquiry about work in Marionville, Missouri, which is nearby to claimant's place of residence. She has also inquired about work among her friends.

"The Missouri Employment Security Law provides that for a claimant to be eligible for benefits she must be able to work and available for work, and to be deemed available for work she must be actively and earnestly seeking work.

"The Commission is of the opinion that a claimant to be available for work must sincerely want work and must act reasonably for one in her circumstances to relieve her unemployment. It has been held that an individual who has been unem-

ployed for a long period of time must make a greater effort to secure employment than an individual who has been unemployed temporarily or for a relatively short time, and furthermore, as a claimant's period of unemployment continues, it is reasonable to expect her to expand her field or area in which she seeks work.

"The claimant made only two applications in person for work each week, and she applied for work on only one day in each week. Of these applications, some were made at places where she had previously applied, although there was an indication that she had no prospect of securing work at these establishments. During the seven weeks under review, the claimant applied for work at only nine places. She made no inquiries at several factories and restaurants in the immediate area which employed many female workers. Considering all the circumstances, the Commission believes that the claimant did not act reasonably for one in her circumstances to relieve her unemployment and that the claimant had not made a reasonably active and earnest search for work. The Commission, therefore, finds that the claimant was not available for work for the weeks claimed between July 31, 1960 and September 17, 1960.

"The decision of the Appeals Tribunal is modified. The claimant is denied benefits from July 31, 1960 to September 17, 1960."

Error is assigned to the judgment of the trial court reversing and remanding the cause to the Industrial Commission for further proceedings because the findings and final award of the Commission is unsupported by substantial and competent evidence.

■■ In passing upon the issue here presented it is our duty to decide from the whole of the evidence whether the Commission could reasonably have found against claimant as it did. We are not to set aside that finding unless it was clearly contrary to the overwhelming weight of the evidence. Meyer v. Industrial Commission of Missouri, 240 Mo.App. 1022, 223 S.W.2d 835, 839 [4]; Const.Mo.1945, Art. V, Sec. 22, Mo.R.S.A., V.A.M.S.; Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S.W.2d 647; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55; Union-May-Stern Company v. Industrial Commission, Mo. App., 273 S.W.2d 766, 768. This does not mean that we are to arrive at our conclusion solely upon the review of the whole evidence and with a total disregard of the fact that the Commission made its final award against claimant and thereby substitute our judgment on the evidence for that of the administrative tribunal. Kilgore v. Industrial Commission, Mo.App., 337 S.W.2d 91, 97 [1]; Kansas City v. Rooney, 363 Mo. 902, [en banc] 254 S.W.2d 626, 628; Moore v. International Shoe Co., Mo.App., 213 S.W.2d 215, 220 [1–3].

Section 288.040 RSMo 1959, V.A.M.S.— Unemployed worker eligible for benefits, when—provides: "1. A claimant who is unemployed and has been determined to be an insured worker shall be eligible for benefits for any week only if the deputy finds that

"(1) He has registered for work at and thereafter has continued to report at an employment office in accordance with such regulations as the division may prescribe;

"(2) He is able to work and is available for work; provided, however, that no person shall be deemed available for work unless he has been and is actively seeking work; * * *."

In Section 288.210 RSMo 1959, V.A.M.S., it is provided: " * * * In any judicial proceeding under this section, the findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law."

■■ The burden of proof to establish the right of claimant to benefits under the

Unemployment Compensation Law rests upon claimant. · § 288.010 et seq. RSMo 1949, amended Laws 1951, p. 564, V.A.M.S.; Producers Produce Co. v. Industrial Commission, 365 Mo. 996, 291 S.W.2d 166, 173 [2, 3]. The commission's finding of facts is conclusive if supported by substantial evidence, and in determining the sufficiency of the evidence it must be considered in the light most favorable to the finding. Donnelly Garment Co. v. Keitel, 354 Mo. 1138, 193 S.W.2d 577, 579 [1]; Dittmeier v. Missouri Real Estate Commission, Mo.App., 237 S.W.2d 201, 203; State ex rel. Bond v. Simmons, Mo.App., 299 S.W.2d 540, 542.

■ The evidence which support the ultimate facts is what concerns us on appeal. Krisman v. Unemployment Compensation Comm., 351 Mo. 18, 171 S.W.2d 575, 578 [8]; Bussmann Mfg. Co. v. Industrial Com'n of Missouri, Mo.App., 327 S.W.2d 487, 491 [7–9].

■ The law was stated in Meyer v. Industrial Commission of Missouri, 240 Mo. App. 1022, 223 S.W.2d 835, 840 [7] that it frequently happens that there is no testimony in the case other than that of claimant, but if from that testimony two different conclusions or inferences may be drawn as to the ultimate fact at issue, each of such conclusions or inferences being consistent with the testimony, and each inconsistent with the other, it remains for the triers of the facts to determine the issue and draw the inference and it does not become a question of law. The triers of fact, being faced with the witness or witnesses, may believe a part of the testimony and disbelieve another part; or they may draw an inference from the facts different from the inference that the court would draw.

■ The sole question in this case is whether the Commission could have reasonably made its findings and reached its result upon the consideration of the evidence before it. We must decide whether its findings are supported by competent and substantial evidence upon the whole record.

Box v. Morrison, Mo.App., 230 S.W.2d 873, 874 [1]; Const. Mo. 1945, Art. V, Sec. 22, Mo. RSA; Dittmeier v. Missouri Real Estate Commission, Mo.App., 237 S.W.2d 201, 203 [1–3].

Appellants, Industrial Commission of Missouri and the Missouri Division of Employment Security, take the position that the decision of the Commission, dated February 3, 1961, involving a claim for unemployment compensation benefits under the Missouri Employment Security Law, in which claimant, Vesta Cross, was held ineligible for waiting week credit for benefits for the weeks claimed between July 31, 1960, and September 17, 1960, because of her total unemployment between these dates was due to claimant's unavailability for work due to her failure to make an active and earnest search for work. The Commission is of the opinion that a claimant, to be available for work, must sincerely want work and must act reasonably for one in her circumstances to relieve her unemployment.

We find from an examination of the record testimony that the Commission made a fair statement of the ultimate facts in issue and from these facts denied benefits from August 7, 1960, to September 17, 1960. Claimant had worked for ten years, until September 27, 1960, in the Western Light & Telephone office in Aurora. She is 52 years of age and was laid off because the telephone exchange was converted to a dial system. She has had no other significant experience. She completed two years of high school education. Her evidence is that she lives on a farm a few miles from Aurora and has transportation to and from her work in Aurora, a city with a population of about 4500 people. During the weeks under review claimant applied for work at two places on the same day in each week. During the seven weeks under review claimant applied for work at nine different establishments. She testified that she had inquired for work as a salesclerk, as a receptionist and an office clerk as well

as a PBX operator and stated she was willing to accept work at the prevailing wage.

Her testimony was that she listed on the back of each weekly claim form the places where she applied for work. On the claim for the week ending August 6th she listed the names of Dryer's Shoe and Western Light & Telephone. She stated she just applied orally for work by going to the various places. The claim for the week ending August 13th she listed Hughes Drug and Western Light & Telephone Company; for the week ending August 20th she listed Aurora Hospital and Hubbs Propane; for the week ending August 27th she listed Dryer's Shoe and Western Light & Telephone. She admitted that these two places listed were where she had previously applied. For the week ending September 3rd, she listed Bradford Surridge, a funeral home in Marionville and ABC Store in Aurora. She stated she applied for a receptionist's job in the funeral home; that they did not have a full time receptionist. On September 10th she listed Hughes Drug and Ben Franklin Store. She had previously listed Hughes Drug. She stated she applied for work as a clerk in the last two named places; that she could have taken a job in a retail store as clerk. She admitted she could not accept work where she had to stand all the time as she had trouble with her feet. She testified that she asked at the Division of Employment if they had any work and was informed they did not have any place except at a chicken plant where she would have to stand on a concrete floor and she stated she could not take this job because that kind of work made her sick.

Her evidence is that she never worked for wages except for the telephone company and a short time at a shirt factory in Marionville.

There was evidence that there were numerous businesses in and around Aurora where women worked. Claimant made no application to any of them. The evidence was that there were restaurants seeking employees during the seven weeks involved in claimant's claim. Claimant's evidence shows that during the seven weeks involved she made applications for work at nine places. The claim cards she filed show that many of these applications were made to the same employer and there was no evidence that the places where she tried to get employment were in need of employees. Her application for a position in a business in Marionville shows that the employees at that place worked gratuitously. In one of the places she sought employment as a receptionist, her evidence shows that the employer did not keep a regular receptionist.

Under all of the evidence we find that there was substantial evidence to support the finding of the Commission that claimant was not available for work and did not actively and earnestly seek work as required by the statute for the weeks involved.

Judgment of the trial court reversed with directions that the finding and award of the Industrial Commission be affirmed.

RUARK, P. J., and STONE, J., concur.