Wanda L. FLY, Plaintiff-Respondent,

v.

INDUSTRIAL COMMISSION of Missouri, a division of the Department of Labor and Industrial Relations; June R. Rose, George W. Wise and Chas. E. Cates, members, and Division of Employment Security, Defendants-Appellants.

No. 8075.

Springfield Court of Appeals.

Missouri.

Aug. 14, 1962.

Gordon P. Weir and George Schwartz, Jefferson City, for Division of Employment Security.

Lloyd G. Poole, Jefferson City, for Industrial Commission of Missouri.

J. Hal Moore, Aurora, for plaintiff-respondent.

RUARK, Presiding Judge.

This is one of three companion cases (the others being Cross v. Industrial Commission, 359 S.W.2d 494, already decided by this court, and Rapp v. Industrial Commission, 360 S.W.2d 366. The cases, although not consolidated, were argued together. All three of them involve telephone operators who lost their employment with the Western Light and Telephone Company of Aurora when a switch was made to the dial system.

Claimant's employment terminated February 27, 1960. She drew unemployment compensation until July 31, 1960. The deputy determined that she was ineligible from July 31, 1960, to August 13, 1960. Appeal was made to the Appeals Tribunal. Hearing was held on September 28, 1960, and on appeal the referee made findings and decision, a portion of which we copy:

"The Referee is of the opinion that the claimant has not met the availability

requirements of the Law during the weeks under review. A claimant is available for work when he sincerely wants work and when he is acting reasonably in his circumstances to relieve his unemployment. It has been held that an individual who has been unemployed for a long period of time must make a greater effort to secure employment than an individual who has been unemployed temporarily or for a relatively short time. At the time of the hearing the claimant had been unemployed and claiming benefits for seven months. Notwithstanding her long period of unemployment, she made only two applications in person for work each week and she applied for work on only one day in each week. Of these applications some were made at places where she had previously applied although there was an indication that she had no prospects of securing work at those establishments. During the seven weeks under review the claimant applied for work at only eleven places. She made no inquiries for work at several factories and restaurants in the immediate area which employed many female workers. Considering all the circumstances the Referee is not convinced that the claimant, who has been unemployed for seven months, has made a reasonably active and earnest search for work in her circumstances or has done those things reasonably expected of an individual who wants to relieve his unemployment. Accordingly, the Referee finds that the claimant was not available for work from July 31, 1960 through September 17, 1960.

"DECISION:

"The determination of the deputy is affirmed. The claimant is denied benefits from July 31, 1960 through September 17, 1960."

Review having been denied by the commission, judicial review was sought in the circuit court, which remanded and reversed the decision of the commission on the stated ground that it is "unsupported by competent and substantial evidence." The case is here on appeal by the commission.

Wanda Fly is (or was at hearing date) thirty-one years old, with two children, ages eight and nine. She lives on a farm one and a half miles from Aurora. Her husband is employed in Aurora, but she has a separate automobile available to use in going to work.

Under her testimony and the weekly statements accompanying application for benefits it appears that during the period for which she has been denied eligibility she made application for employment as follows:

| | |
|---|---|
| 8–2–60 | B & T (supermarket) and Aurora Baptist Temple |
| 8–9–60 | Bon-Ton (dress shop) and A. B. C. (retail drygoods store) |
| 8–?–60 | Midwest Map Company and Mid-America ("they print advertising") |
| 8–25–60 | Midwest Map and Mid-America |
| 8–31–60 | Aurora Funeral Home and Ben Franklin (retail) |
| 9–7–60 | Binion's (or Benson's?) Furniture and Hub Propane |
| 9–14–60 | Midwest Map and Aurora Greenhouse. |

All of the foregoing places are in Aurora. It will be noted that on one day each week she applied to two establishments.[1] On two successive weeks the application was made to the same two businesses. Within three weeks she again applied to Midwest Map Company, although she had been twice refused employment. Her comment on "results of contact" on the first and second in-

---

1. This also seems to be the pattern followed by the applicants in the two sister cases heretofore mentioned.

quiries was "not hiring until fall." She testified that she had also applied for work at the shoe factory, although it was not shown on her weekly cards. She was not sure when she applied. She had also inquired of friends as to available work. She stated that Marionville was about five miles from Aurora. She knew there was a shoe factory there.

"Q. You haven't applied for work there?

"A. No, I didn't.

"Q. Would you accept factory work if you could get it?

"A. I don't know whether I would or not."

But upon re-examination by her attorney she stated that she would have accepted work at the shoe factory where she had applied if she could make $1 per hour.

As to wages, claimant had made $1.27 per hour. She told "the commission" she would like to have $1.25 per hour but that she would work for $1 per hour.

"Q. Now, what would have been the lowest wage you would have accepted if work would have been offered to you at any of those places [which she had listed as places she had applied]?

"A. Well, I would have liked to have had at least $1 an hour.

"Q. Well, would you have accepted anything less than that?

"A. No, I don't think I would have.

\*    \*    \*    \*    \*    \*

"Q. Do you know the starting wages at those retail stores where you applied for work in Aurora?

"A. Nothing only the dime store which was $30 a week for six days a week, eight hours a day, and other than that I couldn't tell you, nothing else \* \* \*. That was Ben Franklin."

However, on re-examination by her attorney?

"Q. You would have accepted employment at the Ben Franklin Store even working for $30 or $35 a week if they had had an opening, isn't that true?

"A. That's right."

■■ The law is stated in Cross v. Industrial Commission. We find no need to restate except generally, and no need to recite authority. The burden is on the claimant to prove she is available for work. And she is not to be deemed available for work unless she has been "actively and earnestly seeking work." Section 288.040(2), V.A.-M.S., as amended Laws of 1957, p. 531. If there was evidence from which the commission could reasonably have found that the claimant was not actively and earnestly seeking work, but was simply "going through motions" in order to draw unemployment payments, then a court may not properly interfere with the decision even though it might have drawn a different inference from the same facts had it been faced with the determination in the first instance.

■ This case has some similarity to the situation in Carlton v. Division of Employment Security, Mo.App., 246 S.W.2d 388, in which case the claimant had sought work at a number of retail stores in Fredericktown. It was found, l. c. 390, "after approximately ten months of unemployment it should have been apparent to claimant that she had no reasonable prospect of employment in the stores at Fredericktown and that she should have extended her search for work to other communities or other lines of work." The circuit court reversed and remanded the award, but the St. Louis Court of Appeals reversed the circuit court. See also Wagner v. Unemployment Compensation Commission, 355 Mo. 805, 198 S.W.2d 342, 344. The whole kernel in the nut is that claimant is *not* entitled to draw pay because she lost her job. The compensation is payable *because she can't get another one*. She must really and sincerely look for the job, not wait for the job to seek her out. Nor

will a lackadaisical, half-hearted, or occasional effort suffice.

 The claimant had a car available. The record shows that Marionville was nearby; the city of Monett was within driving range; and we think we can take judicial knowledge that Springfield is approximately twenty-six miles away and therefore, within a limited sense depending upon the type and character of employment and the amount of wages, within driving range. These facts, coupled with the fact that claimant, like her sister claimants, felt it necessary to apply for work at only two places, in Aurora, on one certain day each week, and the fact that such application was repeated at places where she had no reasonable expectation of securing employment, could have reasonably permitted the conclusion that claimant was simply "going through motions" in lieu of earnestly and actively seeking employment. For this reason the judgment of the circuit court must be reversed. It is so ordered.

STONE and McDOWELL, JJ., concur.