Iretta M. RAPP, Plaintiff-Respondent,

v.

INDUSTRIAL COMMISSION OF MISSOURI, Division of Employment Security, et al., Defendants-Appellants.

No. 8076.

Springfield Court of Appeals. Missouri.

August 25, 1962.

Lloyd G. Poole, Jefferson City, for defendant-appellant, Industrial Commission of Missouri.

Gordon P. Weir, George Schwartz, Jefferson City, for defendant-appellant, Division of Employment Security.

Moore, Pettit & Steinle, Aurora, for plaintiff-respondent.

STONE, Judge.

This is one of three companion (but unconsolidated) cases [1] involving claims for additional benefits under the Missouri Employment Security Law [Chapter 288] [2] by three former telephone operators for Western Light and Telephone Company at Aurora, Missouri, whose employment by that firm was terminated on February 27, 1960, when the Aurora exchange was converted to a dial system. Benefits were paid to each of the three claimants for about five months before a deputy, i. e., "a representative of the division (of Employment Security) designated to make investigations and administrative determinations on claims", etc. [Section 288.030, subd. 10], made a separate determination as to each claimant that she was ineligible for benefits sought for subsequent weeks because she was not "available for work" during those weeks within the contemplation and meaning of Section 288.-040, subd. 1(2).

From the adverse determination of the deputy, instant claimant, Mrs. Iretta M. Rapp, filed her timely notice of appeal to the appeals tribunal in which claimant stated: "I have contacted every place that I can work. They have no openings and don't know when will have. One place said would be *hireing* in fall." Following a hearing before the appeals tribunal, at which claimant was represented by counsel, the appeals referee made a detailed finding of facts, affirmed the deputy's determination, and denied benefits for the period of six weeks from August 7 through September 17, 1960. Section 288.190. Claimant's application for review by the Industrial Commission of Missouri (hereinafter referred to as the Commission) having been denied, the decision of the appeals tribunal became the decision of the Commission for judicial review [Section 288.200, subd. 1]; and thereafter claimant sought and obtained such judicial review by commencing an action in the Circuit Court of Lawrence County against the Commission and the Division of Employment Security (hereinafter called the Division). Section 288.210;

---

1. The companion cases are Fly v. Industrial Com'n. of Missouri, Mo.App., 359 S.W.2d 481 [No. 8075], and Cross v. Industrial Com'n. of Missouri, Mo.App., 359 S.W.2d 494 [No. 8077].

2. Except as otherwise specifically stated, all statutory references are to RSMo 1959, V.A.M.S.

as amended Laws of 1961, S.B. No. 346. In due time the circuit court entered judgment finding that the decision of the Commission was "unsupported by competent and substantial evidence" and remanding the cause to the Commission for further proceedings. With the Commission and the Division thereby cast in the role of aggrieved parties, the cause comes to us on their appeal.

■ Before briefly reviewing the facts, it may be well for us to remind ourselves that the scope of judicial review in proceedings for benefits under the Employment Security Law [Chapter 288] is the same as in proceedings for benefits under the Workmen's Compensation Law [Chapter 287]. Bussmann Mfg. Co. v. Industrial Com'n. of Missouri, Mo.App., 327 S.W.2d 487, 492 (8) ; Union-May-Stern Co. v. Industrial Com'n. of Missouri, Mo.App., 273 S.W.2d 766, 768(1). Thus, although on judicial review the courts are authorized to determine whether, upon the entire record, the Commission reasonably could have made the findings and decision under consideration, this does not mean that either the circuit or the appellate court should or may substitute its own judgment on the evidence for that of the Commission; but, on the contrary, the reviewing court may set aside the findings and decision only if they are clearly contrary to the overwhelming weight of the evidence, when the evidence in its entirety, including all legitimate inferences reasonably deducible therefrom, is viewed in the light most favorable to such findings and decision. Kilgore v. Industrial Com'n. of Missouri, Mo.App., 337 S.W.2d 91, 96–97; Division of Employment Security v. Industrial Commission, Mo.App., 242 S.W.2d 593, 597(2) ; Meyer v. Industrial Com'n. of Missouri, 240 Mo.App. 1022, 223 S.W.2d 835, 839(4).

Instant claimant was 53 years of age at the time of hearing on September 28, 1960. With her husband and their 17-year old son, she resided on a farm 3½ miles northeast of Aurora but had an automobile available for her use in driving to and from work. She had worked 26 years as a telephone operator, the last 7 of which were for Western Light and Telephone Company; and, at the time of termination of her employment, her wage was $1.47 per hour.

■ Referring to the period for which benefits were denied, i. e., August 7 through September 17, 1960, claimant first stated, in general terms, that she had sought work *"two days each week"*; that each week "I tried at least two (places), *sometimes I tried more than that"*; and that "*I contacted all the stores in Aurora,* and the Midwest Map and the Mid-America (Advertising Company)." (All emphasis herein is ours.) But, she also said that her weekly claim forms, each of which bore her signature certifying that it was true and correct, listed all of the places where she had sought work; and, in the course of subsequent detailed examination concerning those weekly claim forms, she agreed that *each such form* showed that she had made "employment contacts" with *only two firms during the week* for which the claim form had been submitted and that *both such contacts had been made on the same day of that week*. In summary, these weekly claim forms demonstrated that, during the period of six weeks from August 7 through September 17, 1960, claimant had sought work on only six days during that entire period and her cumulative efforts on those six days were limited to only twelve "employment contacts," all of which had been in Aurora and two of which had been return visits to firms previously contacted during the same six-week period where there was no prospect of obtaining employment. Thus, she admittedly had sought work at only *ten* places, two of which were doctor's offices. From the last United States census, of which we take judicial knowledge [Missouri Public Service Co. v. Barton County Elec. Coop., Mo.App., 353 S.W.2d 818, 819(1)], we note that in 1960 the population of Aurora was 4,683 and the population of the neighboring city of Monett was 5,359.

On examination by the appeals referee, claimant said that she "would work for $1 an hour" and, when asked whether "that would have been the lowest wage you would have accepted," bluntly answered "yes." In response to a subsequent inquiry by her counsel as to whether "you (would) have gone to work for them *to start, I mean just the starting rate*, if it was less than $1 an hour," claimant likewise said "yes." But thereafter, in stating what she had told the Monett office of the Division, claimant significantly related that "*they asked me how much I would have to have, and I said at least $1 an hour in Aurora, and she wanted to know if I would come to Monett, and she said how much, and I said at least $1.50.*"

■ The burden of establishing her right to benefits under the Employment Security Law rested upon claimant. Wolpers v. Unemployment Compensation Commission, 353 Mo. 1067, 186 S.W.2d 440, 442(3); National School of Aeronautics v. Division of Employment Security, Mo.App., 226 S.W.2d 93, 95(4). She assumed "the risk of non-persuasion" [Haynes v. Unemployment Compensation Commission, 353 Mo. 540, 544, 183 S.W.2d 77, 80]; and, as in proceedings before other fact-finding administrative agencies [e. g., Scott v. Wheelock Bros., 357 Mo. 480, 209 S.W.2d 149, 151(3); State ex rel. Rice v. Public Service Commission, 359 Mo. 109, 220 S.W.2d 61, 65(9, 10); Norman v. State Dept. of Public Health & Welfare, Mo.App., 283 S.W.2d 143, 146(4, 5), and cases there cited], the trier of the facts in this proceeding, before whom claimant appeared, had the right to believe some portions of her testimony and to disbelieve other portions thereof. Cross v. Industrial Com'n. of Missouri, Mo.App., 359 S.W.2d 494 [No. 8077]; Meyer v. Industrial Com'n. of Missouri, supra, 223 S.W.2d loc. cit. 840(7). Furthermore, if from claimant's testimony two different inferences or conclusions reasonably might have been drawn, each of such inferences or conclusions being consistent with the testimony although inconsistent with the other, it was for the trier of the facts to resolve the issue and to draw one of the allowable inferences or conclusions. Kilgore v. Industrial Com'n. of Missouri, supra, 337 S.W.2d loc. cit. 96, 100; Union-May-Stern Co. v. Industrial Com'n. of Missouri, supra, 273 S.W.2d loc. cit. 768(2). And, the judicial inquiry of the reviewing court is *not* whether a contrary conclusion might have been permissible, but whether, upon the entire record, the Commission reasonably could have made the findings and decision under consideration here. Cf. Gregory v. Lewis Sales Co., Mo.App., 348 S.W.2d 743, 747(5); Barton v. Western Fireproofing Co., Mo.App., 326 S.W.2d 344, 349(5), and cases collected in footnote 3.

An unemployed individual is eligible to receive benefits only if the Commission finds, from competent and substantial evidence, that the conditions imposed by statute have been satisfied. Producers Produce Co. v. Industrial Com'n. of Missouri, 365 Mo. 996, 291 S.W.2d 166, 173(3); Haynes v. Unemployment Compensation Com'n., supra, 353 Mo. loc. cit. 544, 183 S.W.2d loc. cit. 80. Since enactment by the 59th General Assembly of the first Missouri legislation in this field, then forthrightly denominated as the "Unemployment Compensation Law" [Laws of 1937, p. 574], one of the statutory conditions of eligibility to receive benefits has been that "he (or she) is able to work, and is *available for work.*" Laws of 1937, p. 590; C.S.S.B. 36, § 9(c). In discussing the quoted condition, our Supreme Court said in Haynes v. Unemployment Compensation Com'n., supra, 353 Mo. loc. cit. 547, 183 S.W.2d loc. cit. 82, that the General Assembly thereby "required a sufficient showing of evidence to support a finding by the commission, and a finding by the commission, that the claimant was during said week 'capable of being used to accomplish a purpose' for work; that he was 'at disposal; accessible or attainable' for work; and that he was 'ready, handy, convenient, usable and obtainable' for work. See Webster's New International Dictionary, Second Edition."

In 1943, the 62nd General Assembly amended the quoted condition by *adding* thereto the definitive and delimiting proviso, "provided, however, that no person shall be deemed *available for work* unless he has been and is *actively seeking work.*" Laws of 1943, p. 933; S.B. 150, § 5. Shortly thereafter, our Supreme Court pointed out in Wagner v. Unemployment Compensation Com'n., 355 Mo. 805, 808–809, 198 S.W.2d 342, 344, that the phrase "available for work" had been given "a more positive construction of meaning" by addition of the proviso, and that thereby "it is required that a person . . . must (in order to be deemed 'available for work' as now construed in accordance with legislative mandate) have been and be 'actively seeking' work, that is, not passively available and waiting for work, but actively 'in search of' work. Webster's International Dictionary, Second Edition, p. 2266."

■ In 1951, the 66th General Assembly adopted the more sophisticated title of "Missouri Employment Security Law" [Laws of 1951, p. 565; Section 288.010], although no doubt fully aware that "a rose by any other name would smell as sweet" [Shakespeare, Romeo and Juliet, Act II, Sc. 2, Line 43] or, as we might put it, an act by any other name would remain the same. But, the quoted condition of eligibility (with the added proviso) remained unchanged until 1957, when the 69th General Assembly amended the definitive and delimiting proviso by *adding* the words hereinafter italicized so that thereafter it read, "provided, however, that no person shall be deemed available for work unless he has been and is actively *and earnestly* seeking work." Laws of 1957, p. 539; Section 288.-040, subd. 1(2). In putting upon the added language, "honestly and faithfully, its plain and rational meaning" [Cummins v. Kansas

City Public Service Co., 334 Mo. 672, 684, 66 S.W.2d 920, 925; Artophone Corp. v. Coale, 345 Mo. 344, 353, 133 S.W.2d 343, 347] and in taking the words of the amended statute "in their plain or ordinary and usual sense" [Section 1.090], we consult the same authority, to which our brethren of the high court have turned; and, so doing, we conclude that, to be deemed "available for work" under the statute [Section 288.-040, subd. 1(2)], which now includes the specific requirement that the unemployed person "has been and is . . . *earnestly* seeking work," a claimant must adduce competent and substantial evidence from which the Commission reasonably may find, and is persuaded to find, that such claimant's search for work is "zealous, ardent, sincere, hearty," since "earnest" is synonymous with those terms and "always connotes sincerity." Webster's New International Dictionary, Second Edition, p. 808.

■ Although, as others have stated, the legislation presently known as the Missouri Employment Security Law "provides a paternalistic system of protection for the employee," that system is designed not only for the employee's individual benefit but also for the general welfare [Krisman v. Unemployment Compensation Com'n., 351 Mo. 18, 23, 171 S.W.2d 575, 578(5); Howell v. Division of Employment Security, etc., 358 Mo. 459, 465, 215 S.W.2d 467, 472]; and it appears that the legislative intention, as evidenced in the initial enactment [3] and as confirmed and strengthened by amendments from time to time (including those hereinbefore discussed), has been from the outset to help *only* those who sincerely undertake to help themselves. So it is that our courts have held that one may not be "deemed available for work" [Section 288.-040, subd. 1(2)] who voluntarily, arbitrarily and unreasonably restricts or limits

3. In this connection, note also the legislative declaration of public policy prefacing the first unemployment compensation law, which included the statement that "the public good and the general welfare . . . require the enactment of this measure . . . for compulsory setting aside of unemployment reserves to be used *for the benefit of persons unemployed through no fault of their own.*" Laws of 1937, p. 574; C.S.S.B. 36, § 2.

either *the character of work* which he or she would undertake [cf. Haynes v. Unemployment Compensation Com'n., supra, 353 Mo. loc. cit. 547, 183 S.W.2d loc. cit. 82 (11)] or *the wage* which would be acceptable [cf. Parker v. Unemployment Comp. Com'n. of Missouri, Mo.App., 221 S.W.2d 840, 842] or *the area* within which employment is sought or would be taken. Cf. Fly v. Industrial Com'n. of Missouri, supra; Carlton v. Division of Employment Security, Mo.App., 246 S.W.2d 388, 390.

Without belaboring the facts, suffice it to say that, with all of the foregoing in mind, we have no doubt but that, on the record before us, the Commission reasonably could have found that, during the period from August 7 through September 17, 1960, instant claimant was not "available for work" within the contemplation and meaning of Section 288.040, subd. 1(2). Accordingly, the judgment of the circuit court is set aside and the cause is remanded with directions to enter judgment affirming the decision of the Commission.

RUARK, P. J., and McDOWELL, J., concur.