Beverly **BLACKMAN**, Plaintiff-Appellant,

v.

**INDUSTRIAL COMMISSION of Missouri, DIVISION OF EMPLOYMENT SECURI-TY of Missouri, and Chevrolet, St. Louis Shell Division of General Motors Corporation, Defendants-Respondents.**

No. 34435.

Missouri Court of Appeals,
St. Louis District,
Division One.

Jan. 30, 1973.

McElwee & McElwee, St. Louis, for plaintiff-appellant.

Curtis K. Cochell, Chief Counsel Div. of Employment Security, Lloyd G. Hanley, Counsel, Terry C. Allen, Jefferson City,

Lloyd G. Poole, Industrial Comm. of Mo., Jefferson City, for defendants-respondents.

VERNON W. MEYER, Special Judge.

This is an appeal from a decision of the Circuit Court affirming the findings and conclusions of the Industrial Commission of Missouri that appellant is ineligible for unemployment benefits beginning May 17, 1970, and is disqualified from further benefits until she has earned wages after June 12, 1970, equal to ten times her weekly benefit amount.

In August, 1967, appellant was employed by Chevrolet, St. Louis Shell Division of General Motors Corporation, (hereinafter called Chevrolet-Shell) as a clerk-typist, at a salary of $498.23 per month for a nine-hour day, six days per week. Prior to working there, she was employed as a clerk-typist at General Electric (no rate of pay given) from 1959 to 1963 and at Nixon and Associates, as a secretary (no rate of pay given) from 1963 to 1965. She was laid off by Chevrolet-Shell on February 27, 1970, at which time her salary was $613.00 per month, for an eight-hour day, five days per week.

Appellant filed her initial claim under the Missouri Employment Security Law effective March 1, 1970. She was administratively determined ineligible by a deputy for benefits beginning May 17, 1970, on the grounds that she was unavailable for work. She appealed from that determination on June 16, 1970. She was also administratively disqualified by a deputy from benefits after June 12, 1970, on the grounds that she had failed without good cause to apply for available suitable work at Schnuck's Market when so directed by the Missouri Division of Employment Security (hereinafter called the Division) on June 12, 1970. She appealed from that determination on June 23, 1970.

Both appeals were heard contemporaneously by an Appeals Tribunal (Referee) on August 6, 1970. Appellant was not repre-

sented by counsel. From the decision rendered by the Referee on August 14, 1970 appellant filed an Application for Review on August 24, 1970.

On October 7, 1970 the Industrial Commission issued an order remanding the matter to the Appeals Tribunal with directions to "[h]old a hearing so that claimant will have an opportunity to offer competent evidence bearing on her eligibility for benefits, as requested in the Application for Review. Thereafter, the transcript of the evidence received at such hearing to be forwarded to the Commission."

As a result of such order of remand, a hearing was held on October 27, 1970, at which time appellant was represented by counsel.

A Division representative testified that for eight years she had been employed by the Division as an E. S. Technician. Her duties were to take orders from employers as they came in and to select applications either from the applicants coming in or from the file and refer them to jobs, to help both the applicant and the employer. She further testified that she had become familiar with wages, hours and working conditions in various occupations and industry in the St. Louis Area; that the prevailing starting rate for clerk-typists was $80 to $100 per week; that in her office the starting range for clerk-typists was $369.00; that in industry the prevailing rate was $80 to $100.

Appellant testified that when she first applied for benefits a woman at the Division told her she was going to bring her down to the prevailing salary. Appellant replied that she would accept a job at $560.00. She further testified she refused about seven jobs because in each instance the salary was too low, varying from $300.00 to $425.00 per month, or the hours too long. At the second hearing before the referee on the remand order appellant testified she told the Division representative she would not refuse any offer she thought

was promising, that had a future, at $500.-
00, $525.00, but that the representative did
not put this down.

There was a variance in the testimony
regarding the position at Schnuck's Mar-
ket. A Division representative testified
that the position available was clerk-typist
in the personnel department with a salary
range of $95.00 to $100.00 per week or pos-
sibly more, depending on experience. This
was to have been discussed with the appli-
cant. The hours were from eight to four,
Monday through Friday. Applicant testi-
fied she was told by a Division representa-
tive that the position available was inven-
tory control clerk with a straight salary of
$95.00 per week.

Appellant further testified there were
two job classifications at Chevrolet-Shell,
stenographer and clerk-typist and that she
was hired as a clerk-typist. At no time did
she testify that during her two and one-
half years of employment with Chevrolet-
Shell her job classification was changed to
that of stenographer.

At the second hearing before the Ref-
eree, appellant's attorney read into the rec-
ord the results of a wage survey prepared
by Associated Industries of Missouri in June
of 1970 which listed the minimum salary
for senior clerks as $477.00 per month and
the maximum as $648.00 per month. The
average monthly salary for senior clerks in
a manufacturing concern was $542.00 per
month. In response to inquiry by counsel,
appellant testified that she would definitely
be classified as a senior clerk or secretary;
this in spite of the fact that she testified
that her shorthand was not very good,
about forty words a minute, and that of
the two possible classifications at Chevro-
let-Shell (clerk-typist or stenographer) she
was classified in the lower of the two.

Thereafter, on March 12, 1971 the In-
dustrial Commission found the claimant to
be ineligible for benefits beginning May
17, 1970, and disqualified for benefits until
she has earned wages after June 12, 1970,
equal to ten times her weekly benefit

amount and adopted and affirmed the find-
ings and decision of the Appeals Tribunal
rendered on August 14, 1970 as set out be-
low:

"The claimant has worked as a clerk-
typist for a number of years. She was
last so employed at a wage of $613 a
month. She was laid off on February
27, 1970.

"The claimant testified that she was able
to work and that she had looked for
work, but that she would not accept a
starting wage less than $560 a month.
The starting rate for clerk-typists in the
area in which the claimant lives ranges
from $80 to $100 a week.

"On June 12, 1970, an employment depu-
ty for the Division directed the claimant
to apply for available work as a clerk-
typist at a starting rate from $95 to $100
per week, depending upon experience.
The claimant refused to apply as direct-
ed.

"The Missouri Employment Security Law
provides that to be eligible for benefits a
claimant must be able to work and avail-
able for work, and that no person shall
be deemed available for work unless he
has been and is actively and earnestly
seeking work. The Law also provides
that a claimant shall be disqualified for
waiting week credit or benefits until aft-
er he has earned wages equal to ten
times his weekly benefit amount if he
has failed without good cause to apply
for available suitable work when so di-
rected by a deputy.

"A claimant who is unwilling to accept
work at the prevailing starting rate is
not actively and earnestly seeking work
and is not available for work. Accord-
ing to the evidence this claimant has
been unemployed since February 27,
1970. She is demanding a minimum rate
of $560 a month, which is substantially
above the prevailing starting rate for
clerk-typists. The Referee therefore
finds that the claimant has not been
available for work.

"The Referee also finds that the claimant failed without good cause to apply for work as a clerk-typist at a wage of $95 to $100 a week when so directed by a deputy. Such work was suitable for the claimant and she did not have good cause for her failure to apply as directed. The Referee therefore finds that the claimant failed without good cause to apply for available suitable work when so directed on June 12, 1970."

■ ■ Before going into the merits of this appeal, we will first redefine our role on review of administrative decisions. We are authorized to determine whether, upon the entire record, the Commission could reasonably have made the findings and decision under consideration. We may not substitute our own judgment on the evidence for that of the Industrial Commission, but may set aside the Commission's judgment only if it is clearly contrary to the overwhelming weight of the evidence. Cross v. Industrial Commission of Missouri, Mo.App., 359 S.W.2d 494; Rapp v. Industrial Commission of Missouri, Mo. App., 360 S.W.2d 366. We must view the evidence, together with all legitimate inferences to be drawn therefrom in the light most favorable to the Commission's decision. *Rapp,* supra; Dittmeier v. Missouri Real Estate Commission, Mo.App., 237 S. W.2d 201. The only question here is whether the Commission could have reasonably reached the conclusion it did, even where two possible conclusions may be made upon the evidence. Kansas City v. Rooney, 363 Mo. 902, 254 S.W.2d 626; Union-May-Stern Co. v. Industrial Commission of Missouri, Mo.App., 273 S.W.2d 766. It is axiomatic, of course, that the burden of proof is on the claimant. Haynes v. Unemployment Compensation Commission, 353 Mo. 540, 183 S.W.2d 77; cases cited, supra.

■ With these principles in mind, we move to the specific issues presented on this appeal. Appellant first contends that the limitation of a starting rate is an ille-

gal limitation upon Sec. 288.050, RSMo 1969, V.A.M.S. That Statute reads in part as follows:

" * * * a claimant shall be disqualified * * * if the deputy finds

"(2) That he failed without good cause either to apply for available suitable work when so directed by the deputy, or to accept suitable work when offered him, * * *.

"(a) In determining whether or not any work is suitable for an individual, the division shall consider * * * his physical fitness and prior training, his experience and prior earnings, his length of unemployment, his prospects for securing work in his customary occupation, * * *.

"(b) * * * no work shall be deemed suitable and benefits shall not be denied * * * for refusing to accept new work * * *.

"b. If the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality."

She argues that the "starting" rate implies the lowest possible rate and little or no experience. However, she has produced no proof to support this allegation. The record itself, while not containing a specific definition of this phrase, nevertheless, does not support her argument. Appellant's job history was known to the Division. It does not seem likely that, knowing of her experience, the Division would arbitrarily relegate her to a job classification which could be easily filled by a beginner. Obviously, the demand for experience in the job market would far outdistance the demand for no experience. The prevailing rate, as testified to by a Division representative was given in terms of a scale, i. e., $80.00 to $100.00 per week for clerk-typists. It seems reasonable to assume that an experienced clerk-typist would warrant the highest rate on the

scale, while a beginner could expect the minimum rate.

Appellant complains of the disparity that exists between her salary at the time of the termination of her employment with Chevrolet-Shell ($613.00 per month) and a prevailing starting wage of $80.00–$100.00 per week and refers to the difference between her starting salary at Chevrolet-Shell ($498.23 per month) and her salary demand of $560.00 per month as a modest five percent a year to compensate for the inflationary trend. Because she was paid $613.00 per month on the basis of a five-day, forty-hour week and $498.23 per month on the basis of a six-day, fifty-four hour week, we must consider her compensation on an hourly basis to view it in the proper perspective. In so doing, we find appellant to have been paid at the approximate rate of $2.13 per hour when she began her employment with Chevrolet-Shell and at the approximate rate of $3.54 per hour at the time of its termination. $100.-00 per week for a forty-hour week reflects a scale of $2.50 per hour. Thus, we find a starting wage of $100.00 per week to represent an increase of approximately 17.-04% over appellant's starting salary with Chevrolet-Shell. We also find that she enjoyed an approximate 66% increase in her compensation over her two-and-a-half years period of employment with Chevrolet-Shell. We find a salary of $560.00 per month on the basis of a forty-hour week to represent a scale of $3.23 per hour. This is an approximate 51% increase over her starting salary with Chevrolet-Shell, hardly a modest 5% per year.

It must be recognized that $613.00 per month represents the salary paid to an employee after two-and-a-half years experience in the demands peculiar to a particular employer and does not necessarily reflect the starting wage of one who is newly employed even though experienced in similar pursuits with other employers.

■ We find nothing in the record to indicate that the Commission flagrantly refused to follow the dictates of Section 288.050 RSMo 1969, V.A.M.S. The burden was and is on the appellant to prove that her prior experience and earnings were not considered by the Commission in reaching its decision. This she failed to do.

■ Appellant's second argument is that there is no competent and substantial evidence to support the Commission's determination that she was expecting compensation substantially above the prevailing rate. She attacks the testimony of the employment technician from the Division as consisting of mere conclusions.

■ Considering the nature of her employment, the knowledge and experience she gained during her eight years in that employment with the Division, detailed supra, we find the technician eminently qualified to testify concerning wages, hours, and working conditions in various occupations and industry in the St. Louis area. We find her testimony to be a sound basis upon which the Commission could reasonably have made the findings and decision under consideration.

■ We have likewise considered the results of the wage survey read into evidence at the second hearing by appellant's counsel but find it to be of no assistance to us because it applies to senior clerks and does not purport to cover prevailing starting rates. We have only appellant's testimony by which she qualifies herself as a senior clerk. Significantly, even though Chevrolet-Shell recognized her capability by rewarding her with a substantial increase in salary, there is no evidence that it changed her classification from that of clerk-typist. Thus, we must conclude that appellant did not sustain her burden of proof on the prevailing starting rate of compensation for a worker of her ability.

Appellant's final argument is that the position at Schnuck's Market for which she refused to apply was not suitable work

within the meaning of Section 288.050, RSMo 1969, V.A.M.S.

 Our courts have held, however, that a claimant cannot unduly restrict her availability for employment by arbitrarily limiting the character of work, the area within which employment is sought or would be taken, or the wage which would be acceptable. Fly v. Industrial Commission, Mo.App., 359 S.W.2d 481; *Cross*, supra; *Rapp*, supra.

In Parker v. Unemployment Compensation Commission of Mo., Mo.App., 221 S. W.2d 840, the appellant, among other thing, was demanding a higher wage than that which was prevailing at the time. The court held that she could not be said to be available for work and actively seeking work within the meaning of the statute.

In the case at bar, appellant's own testimony was that she refused six jobs because the salary was too low and one because a six-day work week was required. She refused even to apply for the job at Schnuck's. Yet, at that time, she had been out of work for over five months. Furthermore, the record is devoid of evidence that the Schnuck's job involved work "demeaning" to a person of her skills. Her admitted reason for refusing to apply was the salary offered.

 Appellant is attempting to equate "less suitable" with "not suitable." Our Supreme Court has held that because a job is *less* suitable than claimant would like, does not make it *un*suitable. S. S. Kresge Co. v. Unemployment Compensation Commission, 349 Mo. 590, 162 S.W.2d 838. Certainly, a lower-paying job is less suitable. But can it be said that it is not suitable for that reason alone?

Again, it was appellant's burden to convince the Commission that she was entitled to benefits, and that she had been actively and earnestly seeking employment. Her arbitrary limitation of the wage she would accept constitutes sufficient evidence for the Commission to reasonably find that she had not brought herself within the requirements of Section 288.050, RSMo 1969, V.A.M.S. Since that conclusion is reasonable upon consideration of all the evidence, this court will not arbitrarily substitute its own judgment merely because another conclusion is possible. Kansas City v. Rooney, supra; Union-May-Stern v. Industrial Commission, supra.

The judgment appealed from is, accordingly, affirmed.

DOWD, C. J., and CLEMENS and McMILLIAN, JJ., concur.